63929. BLACK et al. v. CITY OF CORDELE et al.

DEEN, Presiding Judge.
Church's Fried Chicken, Inc., acquired a lot adjacent to Turton's Shopping Center in Cordele, Georgia. A concrete block retaining wall separated the two properties and a natural gas pipeline ran diagonally across Church's property from an old service station located on the property to the retaining wall, under the wall, and then parallel to it at the back of the shopping center. At the wall, the pipeline on Church's property was connected to the parallel section by a compression coupling. Church's employed Southeastern Porcelain and Construction Company, Inc., to construct one of their fast-food restaurants on the premises. Southeastern, in turn, hired Spikes Heavy Equipment (owned by Ken Spikes) to tear down the old service station and remove the underground gasoline storage tanks. Coppock, the construction foreman for Southeastern, was present on the premises while the service station was being torn down. On February 18, 1980, Spikes' company called the city gas department and asked that the natural gas line running from the

retaining wall to the service station be disconnected and capped. The city's employees arrived shortly thereafter with a backhoe and Spikes showed them where to dig and watched them work. Spikes heard Watson, head of the gas department, warn the workers not to hit the pipeline with the backhoe. Spikes apparently left the digging site for a few minutes and when he returned he discovered that the pipeline had been struck and broken by the backhoe. He observed a "jagged bend" in the line and natural gas escaping. He saw the workmen cap the pipe and test for leaks where the line was broken and then recover the exposed portion of the line. Coppock, who was not at the site when the digging commenced, arrived about fifteen minutes before the work was completed. He claims he did not see a bend in the pipeline because he wasn't paying attention and did not observe any testing for leaks at the site of the digging. Neither man saw the city workmen test for leaks near the location of the compression coupling which was located approximately fourteen feet from the digging site.

Two days later, the proprietor of a bookstore in the shopping center appeared on the Church's lot and informed Coppock that she smelled an odor like gas in her store. Coppock accompanied her back to the store, identified the odor as natural gas, and agreed to take care of it. When he returned to the construction site, he obtained the telephone number of the city gas department from Spikes and Spikes saw him enter a telephone booth immediately thereafter. Coppock claims that he called Watson at the gas department and informed him of the odor of natural gas in the bookstore. Watson denies receiving the call. The next day, the proprietor of the bookstore again approached Coppock and informed him that she still smelled gas. He did nothing. Approximately fifteen minutes later there was an explosion and fire in the shopping center. Homer and Vivian Black, the appellants' parents, were shopping in a jewelry store when the explosion and fire occurred. They suffered severe injuries from which they died approximately one week later.

An investigation into the fire and explosion revealed that the gas pipe leading to the old service station was pulled away from the coupling at the retaining wall (the ends of the coupling were separated by a twelve inch gap), that natural gas had seeped into the surrounding ground and had accumulated underneath the buildings in the shopping center, and that the explosion of natural gas caused the injuries to the Blacks. An appeal is brought from the trial court's grant of summary judgment in favor of Southeastern Porcelain. *Held:*

The trial court found that a city ordinance which placed the right to control the location, maintenance or manner or method of operation of the city owned gas line exclusively with the city precluded the applicability of Code Ann. § 105-502 (2) (liability of an

employer for the negligence of a subcontractor). It further found that neither Spikes nor Coppock, or anyone working for them, did any act to cause the gas to escape nor did they have control over the source of the leaking gas in such a way as to incur a duty to protect persons adjacent to Southeastern's premises. The court cited *Daniel v. Ga. Power Co.,* 146 Ga. App. 596 (247 SE2d 139) (1978) for the proposition that liability depends upon control rather than ownership or possession. The court further found that Southeastern had no duty to warn others of a dangerous condition which existed when Coppock detected the odor of natural gas in the bookstore although it found that Spikes' knowledge of the city in breaking the pipe with the backhoe could be imputed to Southeastern. The court reasoned that the negligence in digging did not necessarily mean that Southeastern should have been aware that there was a direct connection between the negligence and the odor in the bookstore because that connection was established only after the explosion. The court also found that the claim that Southeastern knew of a dangerous condition and failed to take corrective action to be without merit because Southeastern was only aware that natural gas was leaking somewhere in the bookstore.

In first considering the local ordinance, we note that the record does not show that the city had an easement across the land occupied by Southeastern. Therefore, the city does not appear to be the occupier of any portion of the land and only controls the actual pipeline itself. It is well established that "[i]nflammable gas is an inherently dangerous substance [Cits.], . . . [and] the duty of exercising reasonable care in dealing with a dangerous instrumentality to see that the result intended was attained is nondelegable..." *Community Gas Co. v. Williams,* 87 Ga. App. 68, 78, 80 (73 SE2d 119) (1952). It is therefore apparent that the local ordinance was passed for safety reasons and not to insure the owner or occupier of land from tort liability. Therefore, the question remains as to what duty is owed by an owner or occupier of land to an adjacent landowner or persons on the adjacent property when the city-owned gas company retains exclusive control over the operation of a pipeline on the owner or occupier's property and if a jury could find that the owner or occupier had been put on notice that the city had established a hazardous condition on his property.

We find no Georgia cases directly on this point. However, in Frenkil v. Johnson, 175 Md. 592 (3 A2d 479, 482) (1939), it was held that the occupier of land could be found liable for injuries sustained by a passing motorist after a building it was razing was destroyed by an explosion of illuminating gas. Employees of the occupier smelled gas escaping while they were working and the gas company was called

to investigate the source of the leak. The gas company sent a man who removed the meters, plugged the service pipes at their openings and left. The workmen continued to detect the odor of gas, but the defendant neither investigated the cause nor made any effort to abate the cause. After the explosion, it was determined that gas was leaking from old corroded pipes near their connection with the gas main and from a break in the main. The court held the occupier of property has a duty not to injure persons on adjacent premises, and, if a person is injured because of the negligence of the occupier which causes an explosion, the occupier is liable for his injuries. "Should, however, the explosion be of illuminating artificial gas which had invaded the premises through the neglect or unauthorized interference of a third person so that what was otherwise safe became dangerous, the occupier is not liable until he knew, or, in the exercise of reasonable prudence and diligence, should have known, of the altered and dangerous condition, and continues it after such knowledge is so acquired or imputed. [Cits.] Hence, after the occupier or possessor knows or should know of the danger of the artificial condition of the premises to others outside the land, and fails to exercise reasonable care and diligence to make the condition reasonably safe either by removing the danger or by giving adequate warning or by using other effective safeguards, the occupant or possessor becomes liable to persons outside the land for injuries which are the proximate result of such artificial conditions. [Cits.]"

This view is in line with this court's decision in *Howell Gas of Athens v. Coile,* 112 Ga. App. 732, 736 (146 SE2d 145) (1965), wherein it was held that a person in possession or control of premises ". . . owed to adjoining landowners the duty of ordinary care not to damage the adjoining property by blasts, explosions or vibrations emanating from their own property. [Cits.]" The court then relied upon the proposition: " 'A landowner who, himself or by others under his direction or permission, negligently or unskillfully performs an act on his premises which may and does inflict injury on an adjoining owner is liable for the damage so caused.' " The *Howell Gas* case places a duty upon both a landlord and a tenant (depending upon which party applies for gas service) to protect his own interest and that of others to see that gas pipes which are to be installed by workmen employed by the gas company are in a proper and safe condition. See also *Atlanta Gas Light Co. v. Sams,* 29 Ga. App. 446 (116 SE 21) (1922). It would, therefore, appear that a similar duty attaches when an occupier of land requests the gas company to terminate service.

Both of the above cited cases are compatible with the Restatement, Second, of Torts, § 364: "A possessor of land is subject to liability to others outside of the land for physical harm caused by a

structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of harm, if . . . (b) the condition is created by a third person with the possessor's consent or acquiescence while the land is in his possession." The comment to clause (b), section h, states that this section "applies to any structure or other artificial condition which the possessor knows or should know is unduly dangerous to persons outside of the land and which he permits to be created on the land by any third person, irrespective of whether it is of benefit to the possessor or not."

Applying the rules set forth above, a jury could find that Southeastern, through Spikes, requested the city to terminate natural gas service to the property, that after the city complied with the request, Southeastern had notice that the work was negligently performed through the observations of Spikes and the report of the bookstore operator that she smelled gas. It could further find that the pipeline had been negligently excavated, that Southeastern was aware of this negligence (Spikes' observation of the "jagged bend" in the pipeline and Coppock's deposition testimony that he did not think it was good practice to dig up a pressurized gas line with a backhoe because "you could hang it so as to either rupture it there or upstream . . . then there's a chance somebody's going to get blown up"), and from Coppock's own admissions that he did nothing on the day of the explosion after being informed that the odor of gas was still present in the bookstore. Although Southeastern was forbidden from performing any work on the gas line by the local ordinance, a jury could find that once Southeastern had reason to know of the leaking gas it had a duty to warn persons on the adjoining property of the danger and to notify the city gas department so the dangerous condition could be corrected. As the evidence is contradictory as to whether Coppock called the city the day before the explosion, it is a jury question as to whether this aspect of Southeastern's duty had been fulfilled. It is undisputed, however, that Coppock did nothing on the day of the explosion after being informed that the condition still existed. Whether he should have called the city gas company on the. day of the explosion is also a question for the jury.

Accordingly, the trial court erred in granting Southeastern's motion for summary judgment. The appellee's reliance upon *Daniel v. Ga. Power Co.,* supra, is misplaced as Georgia Power had turned possession of the property to Moss Properties who operated a nature trail on the land and Georgia Power did not have knowledge of the dangerous defects in the hiking trail.

*Judgment reversed. Sognier and Pope, JJ., concur.*

DECIDED JULY 16, 1982 —

REHEARING DENIED JULY 30, 1982.

*Matthew H. Patton, Kevin B. Buice,* for appellants.
*Ben F. Easterlin IV, Carr G. Dodson, Seymour S. Owens, Guy V. Roberts, Jr., Thomas Thorne-Thomsen, Henry C. Custer, George M. Mixon, David B. Higdon, Hugh F. Newberry, Hugh M. Dorsey, Jr.,* for appellees.