73820. WORTH COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY et al. v. LEHIGH VALLEY INDUSTRIES, INC.
(359 SE2d 707)

POPE, Judge.

In 1967 defendant Lehigh Valley Industries, Inc. built a textile plant in Worth County. Construction of the plant was financed through the sale of industrial revenue bonds by the Worth County Industrial Development Authority (the Authority). In consideration for the financing arrangement, title to the plant was vested in the Authority which then leased the plant back to Lehigh. Lehigh is a diversified corporation which maintains several operating divisions involved in various enterprises. In 1982 Lehigh spun off its textile divi-

sion and transferred all assets, rights, title and interest of that division to a newly formed corporation. In conjunction with that transfer, Lehigh assigned to the successor corporation all rights and obligations under the lease with the Authority. The assignment of the lease was consented to by the Authority and the trustee representing the bondholders. The successor corporation (hereafter "assignee corporation") defaulted on the lease and the Authority and trustee brought suit against Lehigh to recover rent due under the lease. Plaintiffs appeal from the trial court's grant of summary judgment to Lehigh and the denial of summary judgment to plaintiffs. The lower court did not reveal the ground on which summary judgment was granted. However, Lehigh argues it was released from liability for rent either by the terms of the lease or by the written consent of the Authority and trustee.

1. By its terms, the lease could be assigned by Lehigh without the consent of the Authority or trustee. However, Section 9.1 (a) of the lease provided: "No assignment (other than pursuant to Section 8.3 hereof) shall relieve the Lessee from primary liability for any of its obligations hereunder, and in the event of such an assignment the Lessee shall continue to remain primarily liable for payment of the rents. . . ." Pursuant to the lease, Lehigh could be released from liability only if, pursuant to Section 8.3 of the lease, it consolidated or merged with another corporation or transferred to another corporation "all or substantially all of its assets . . . [if] the corporation to which such transfer shall be made . . . shall (i) expressly assume in writing all of the obligations of the Lessee contained in this agreement, and (ii) shall have a consolidated net worth after such . . . transfer of not less than five times the principal amount of Bonds at the time outstanding."

It is undisputed that the assignee corporation met the net worth requirements of the lease at the time of the transfer and that it assumed all obligations under the lease. However, Lehigh was not released from primary responsibility under the lease unless it transferred "all or substantially all of its assets" to the assignee corporation. The facts show Lehigh transferred only its textile division in what amounted to a spin-off of a substantial part, but not substantially all, of its assets. The assets transferred amounted to only sixty-five percent of Lehigh's total assets.

The phrase "substantially all assets" has been construed most often in the context of statutes requiring the transfer of one corporation's assets to another in order to qualify for certain statutory exemptions or benefits. For example, the transfer of two of five stores, representing sixty-five percent of the previous owner's assets, was not substantially all the assets so as to entitle the successor corporation to the experience rating of the previous owner-employer pursuant to the

Illinois Unemployment Compensation Act. *Winakor v. Annunzio,* 409 Ill. 236 (99 NE2d 191) (1951). Cf. *Alameda Investment Co. v. McLaughlin,* 28 F2d 81 (N.D. Cal. 1928) (ownership of seventy-five percent of a corporation's stock is not "substantially all" of the stock to entitle the majority and minority stockholders to file a consolidated tax return under the Internal Revenue Code). "The word 'substantially' is necessarily an elastic term which does not indicate a definite, fixed amount of percentage. At one extreme it may be said that the transfer does not have to be 100%. At the other extreme it may be said that the transfer cannot be less than 90% in the ordinary situation. . . ." *Auclair Transp. v. Riley,* 96 N.H. 1, 4 (69 A2d 861, 863) (1949).

Section 8.3 of the lease required Lehigh to maintain its corporate existence throughout the term of the lease except in the case of merger, consolidation or transfer of all or substantially all its assets. The lease clearly anticipated that Lehigh would remain primarily liable to the Authority in all circumstances except where, through merger, consolidation or transfer, it lost its corporate existence. In this case, Lehigh remains a viable corporate entity. Even after the transfer of its textile division, three other operating divisions of the corporation remained. Under these circumstances, we find as a matter of law that the transfer of only sixty-five percent of the corporation's assets does not amount to the transfer of "all or substantially all" of its assets. Therefore, we find Lehigh was not released from its obligations under the lease pursuant to Section 8.3 of the lease.

Nevertheless, Lehigh maintains it was released from the lease by the written consent of the authority and the trustee. The facts show the Authority was notified of Lehigh's intent to assign the lease by letter from Lehigh's attorney. That letter indicated the proposed assignment would be made in conjunction with a "restructuring [of Lehigh's] corporate set up." The letter confirmed the assignee corporation would assume all obligations under the lease and recited the company's net worth, apparently in an attempt to satisfy the requirements of Section 8.3 of the lease. Both the Authority and the trustee executed a written consent to Lehigh's assignment of the lease. However, the undisputed facts show Lehigh never expressly informed the Authority or the trustee of its plan to transfer corporate assets to the assignee of the lease. Since the written consents, prepared by Lehigh's own attorney, refer only to the assignment of the lease they cannot be interpreted as releases of Lehigh's primary liability under the lease. The lease expressly states that an assignment will not release Lehigh from its obligations. "[M]ere acceptance by the obligee of performance by the assignee, or substituted obligor, of the contract is not sufficient to establish novation in the absence of words or conduct tending to show an intention or agreement on the part of the obligee to

release the original obligor and extinguish his liability." *Cowart v. Smith*, 78 Ga. App. 194, 199 (50 SE2d 863) (1948). When a lease recites that the original lessee is to remain liable even if the lease is assigned, "[t]he lessee [is] not relieved from its contractual obligation . . . merely because the lessor [gives] his written consent to the assignment." *Southland Investment Corp. v. McIntosh*, 137 Ga. App. 216, 222 (223 SE2d 257) (1976). Neither is the stipulation entered into by the Authority and the trustee in bankruptcy proceedings brought by the assignee corporation evidence of the Authority's intention to release Lehigh as the primary obligor under the lease. Lehigh transferred all its rights and interest under the lease to the assignee corporation. Therefore, the Authority's agreement to apply the bond fund balance to the debt owed by the assignee and to grant the assignee an option to purchase the premises pursuant to the terms of the lease in no way prejudiced Lehigh's rights and did not serve as a novation releasing Lehigh from its obligations under the lease. Because there exists no evidence that the Authority or the trustee either expressly or impliedly released Lehigh from its obligation to remain primarily liable under the lease, judgment in favor of Lehigh was in error. See *Leasing Systems v. Easy Street, Inc.*, 161 Ga. App. 756 (1) (288 SE2d 879) (1982); *Franchise Enterprises v. Ridgeway*, 157 Ga. App. 458 (1) (278 SE2d 33) (1981).

2. For the reasons recited in Division 1, we find the lower court erred in denying summary judgment in favor of the Authority and trustee.

3. Plaintiff's third enumeration of error is addressed in Division 1 of this opinion.

*Judgment reversed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED JUNE 29, 1987 —
REHEARING DENIED JULY 13, 1987 — ■

*Timothy K. Adams, Hubert C. Lovein, Jr., Clarence A. Miller*, for appellants.

*Jerome L. Kaplan, Ronald C. Thomason, James J. Fason III*, for appellee.