## A91A0067. GREEN v. MORELAND et al.
### (407 SE2d 119)

Carley, Judge.

The relevant facts in this appeal are as follows: Appellee-defendant Catoosa County (county) contracted with F&C Contractors, Inc. (F&CCI) to replace a bridge located in appellee-defendant City of Fort Oglethorpe (city). While engaged in this bridge replacement project as an employee of F&CCI, appellant-plaintiff's husband was killed when a crane came in contact with overhead high-voltage electrical lines. As the result of her husband's death, appellant received workers' compensation benefits from F&CCI and she thereafter initiated this tort action against appellees. Appellees answered and, after discovery, moved for summary judgment. The trial court granted summary judgment in favor of appellees and appellant appeals from that order.

1. With regard to appellant's theory that the county could be held vicariously liable for the negligence of F&CCI, the trial court held that F&CCI was not a servant but an independent contractor. Appellant urges that, in so holding, the trial court erred because a genuine issue of material fact remains as to whether F&CCI was a servant for whose negligence the county could be held vicariously liable.

The evidence of record establishes the terms of the contract for the bridge replacement project. Compare *Harrison & Ellis v. Nashville Milling Co.*, 156 Ga. App. 697 (1) (275 SE2d 374) (1980); *Moon v. Ga. Power Co.*, 127 Ga. App. 524, 526 (1) (194 SE2d 348) (1972). Under the terms of that contract, F&CCI was an independent contractor and not a servant. See generally *Mason v. Gracey*, 189 Ga. App. 150 (1a) (375 SE2d 283) (1988). Moreover, if F&CCI had been the county's servant rather than an independent contractor, then the county would have been the statutory employer of appellant's deceased and thus immune to tort liability pursuant to OCGA § 34-9-11. See generally *Worth County Indus. Dev. Auth. v. Lehigh Valley Indus.*, 183 Ga. App. 634 (359 SE2d 707) (1987).

2. When machinery is to be operated within eight feet of a high-

voltage line, OCGA § 46-3-33 (a) requires the "person or persons responsible for the work to be done" to give prompt notification to the owner or operator of the lines. The phrase "person responsible for the work to be done" is defined in OCGA § 46-3-30 (2) and, when read in conjunction with OCGA § 46-3-33 (a), requires the person or persons *immediately* responsible for the operation of machinery within eight feet of a high-voltage line to give notice. See generally *Malvarez v. Ga. Power Co.*, 250 Ga. 568 (300 SE2d 145) (1983); *Savannah Elec. &c. Co. v. Holton*, 127 Ga. App. 447, 449 (3) (193 SE2d 866) (1972). It is undisputed that only F&CCI undertook the operation of machinery within eight feet of any high-voltage line. It follows, therefore, that the county was not required to give notice and that the county's failure to have given notice is not a basis for imposition of liability against the county for the death of appellant's deceased.

Moreover, the failure to give notice was certainly not a proximate cause of the death of appellant's deceased. The purpose of OCGA § 46-3-33 (a) is to place "a duty upon the owner and maintainer of high-voltage lines where notice is given of a 'construction work risk' although such owner would otherwise not be liable." *Carden v. Ga. Power Co.*, 231 Ga. 456, 457 (202 SE2d 55) (1973). Thus, the failure to have given notice would demonstrate only that the owner of the high-voltage lines owed no duty to appellant's deceased. The only statutory duty that was owed to appellant's deceased, the breach of which could be a proximate cause of his death, is that established by OCGA § 46-3-31: "No person or his agent shall require or permit any employee to perform any act [within eight feet of a high-voltage line] unless and until danger from accidental contact [there]with . . . has been effectively guarded against in the manner prescribed in Code Section 46-3-32." This duty was owed to appellant's deceased by his employer. See *Pappas v. Hill-Staton Engineers*, 183 Ga. App. 258 (358 SE2d 625) (1987). As noted above, his immediate employer was F&CCI and, if F&CCI was not an independent contractor but a servant of the county, the county would nevertheless be immune to tort liability as the statutory employer.

3. Appellant urges that a genuine issue of material fact remains as to the applicability of two exceptions to the general rule of non-liability for the negligence of an independent contractor.

Appellant first urges that the failure of the county to give notice pursuant to OCGA § 46-3-33 (a) "is the violation of a duty imposed by statute" and thus, is within the exception recognized in OCGA § 51-2-5 (4). This contention is clearly without merit for the reasons set forth in Division 2.

Appellant further urges that, "according to the [county's] previous knowledge and experience, the work to be done [was] in its nature dangerous to others however carefully performed. . . ." OCGA § 51-

2-5 (2). However, appellant has not rebutted the county's showing that the bridge could have been safely built if the crane had been placed in a different location. Moreover, such work near high-voltage lines is permitted by OCGA § 46-3-30 et seq. so long as certain safety precautions are taken. Therefore, the work was not "dangerous 'however carefully performed.' Where the work is not inherently dangerous except as a result of the negligence of the contractor the employer is not liable. [Cit.]" *Mason v. Gracey*, supra at 153 (1b). "In *Georgia Power Co. v. Gillespie*, 49 Ga. App. 788 (176 S.E. 786) [(1934)] it was held that, although electricity is an inherently dangerous substance, where there was a safe way to perform the work and the negligence resulting in injury was purely collateral to the work contracted to be done, the employer would not be liable." *Community Gas Co. v. Williams*, 87 Ga. App. 68, 79 (2) (73 SE2d 119) (1952). "It is apparent from the record that except for the negligent conduct of the independent contractor and its employees in doing this work, the injury would not have occurred." *Georgia Power Co. v. Gillespie*, supra at 795. See also *Allen v. Cooper*, 145 Ga. App. 555, 556 (244 SE2d 98) (1978).

4. The trial court held that the county had no liability in its capacity as the owner or occupier of land because the evidence of record showed that possession and control of the work site had been relinquished to F&CCI at the time of the incident. See *Black v. City of Cordele*, 163 Ga. App. 322, 326 (293 SE2d 557) (1982) (factually distinguishing *Daniel v. Ga. Power Co.*, 146 Ga. App. 596 (247 SE2d 139) (1978)); *Amear v. Hall*, 164 Ga. App. 163, 166-167 (2) (296 SE2d 611) (1982). A review of the record demonstrates that the trial court's holding in this regard is correct.

5. Appellant urges that genuine issues of material fact remain as to her claim under 42 USC § 1983. In her complaint, she had alleged a violation of due process in that her husband's death was a direct result of the failure of both the city and the county to enact any safety methods or procedures for construction projects.

"[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, *not as a guarantee of certain minimal levels of safety and security*. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. . . . [The] purpose [of the Due Process Clause of the Fourteenth Amendment] was to protect the people from the State, not to ensure that the State protected them

from each other." (Emphasis supplied.) *DeShaney v. Winnebago County Dept. of Social Svcs.*, 489 U. S. 189, 195-196 (109 SC 998, 103 LE2d 249) (1989). "Further, that 'special relationship' which [may] impose a duty to [establish safety standards] upon the state does not exist under these circumstances. Such a 'special relationship' arises 'from the limitation which [the state] has imposed on [the person's] freedom to act on his own behalf.' [Cit.] 'The key concept is the exercise of coercion, dominion, or restraint by the state.' [Cit.]" *Cleveland v. Fulton County*, 196 Ga. App. 168, 169 (1) (396 SE2d 2) (1990). Compare *Barnes v. Merritt*, 376 F2d 8, 11 (5th Cir. 1967).

Moreover, " '[m]unicipal [or county] liability under § 1983 attaches where — and only where — a *deliberate* choice to follow a course of action is made from among various alternatives' by city [or county] policymakers. [Cit.]" (Emphasis supplied.) *City of Canton, Ohio v. Harris*, 489 U. S. 378, 389 (109 SC 1197, 103 LE2d 412) (1989). See also *Dinsmore v. Cherokee County*, 177 Ga. App. 93, 94 (338 SE2d 523) (1985). In light of the state's enactment of safeguards against contact with high-voltage lines, OCGA § 46-3-30 et seq., any need for the *city* or the *county* to address that issue is not "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city [and the county] can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, supra at 390.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JUNE 25, 1991.

*Mitchell, Coppedge, Wester & Bisson, Susan W. Bisson, Terry L. Miller*, for appellant.

*Renzo S. Wiggins, John T. Minor, Gleason & Davis, John W. Davis, Jr., David J. Dunn, Jr.*, for appellees.