A01A1768. ATLANTA AFFORDABLE HOUSING FUND LIMITED
PARTNERSHIP et al. v. BROWN et al.
(558 SE2d 827)

ELDRIDGE, Judge.

Atlanta Affordable Housing Fund Limited Partnership and Ledic Management Group, Inc. appeal from a jury verdict and judgment for Shaatia J'Nai Brown, a nine-year-old, brought by her mother Tascena Jennings, individually and as her natural guardian, for injuries that the minor received when struck by a truck in the Park Place apartment complex where she lived. Brown was enrolled in an academic enrichment after-school program, "Make a Difference," sponsored in the complex by the defendants. At the time of her injury, she was taking out the trash for the program and ran from behind a van parked in a no-parking zone into the path of a truck, which struck her. The defendants contend that the trial court erred in not granting summary judgment, directed verdict, or judgment notwithstanding the verdict and in failing to charge on assumption of risk for this nine-year-old. Further, the defendants contend that there existed no premises liability or duty to supervise Brown. We do not agree and affirm the judgment.

1. The defendants in separate enumerations of error contend that the trial court erred in failing to grant summary judgment, directed verdict, or j.n.o.v. and in failing to charge on assumption of risk.

The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that [she,] without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed [herself] to those risks. Knowledge of the risk is the watchword of assumption of risk, and means both *actual*

> and *subjective* knowledge on the plaintiff's part. . . . *The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities.* As stated by Dean Prosser: In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given [her] consent to relieve the defendant of an obligation of conduct toward [her], and to take [her] chances of injury from *a known risk arising from what the defendant is to do or leave undone.*

(Citations and punctuation omitted; emphasis in original and supplied.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996); see also *Hillman v. Carlton Co.*, 240 Ga. App. 432, 434 (1) (522 SE2d 681) (1999).

"[A]ctual, subjective knowledge of the specific [danger of an approaching truck] and fully appreciat[ing] its danger" constitute the first element of assumption of the risk defense. *Hillman v. Carlton Co.*, supra at 433-434 (1). Thus, a generalized risk may be assumed, i.e., not stopping and looking both ways before crossing a street or driveway. But for the defense of assumption of the risk to apply in this case, there must be a particularized and subjective awareness of the actual danger of the approaching truck as well, which is the subjective risk assumed of racing against the truck's approach. Id. at 434; see also *Vaughn v. Pleasent*, supra at 865 (2); *Gen. Manufactured Housing v. Murray*, 233 Ga. App. 382, 384 (1) (504 SE2d 220) (1998); *Trustees of Trinity College v. Ferris*, 228 Ga. App. 476, 479 (3) (491 SE2d 909) (1997); *Sutton v. Sumner*, 224 Ga. App. 857, 859-860 (482 SE2d 486) (1997).

While the defendants proved that the nine-year-old plaintiff was generally aware of the risk of crossing streets or driveways and being hit by moving vehicles and the need to stop and look, there existed no evidence that the child saw or was aware of the approach of the specific truck that hit her when she darted out across the driveway, because a van parked in a no-parking area of the complex blocked her view of the approaching truck, and she had seen her friend just ahead of her safely race across the driveway without incident. Plaintiff knew generally that there was a danger in crossing without looking where vehicles drove. However, the presence or absence of moving vehicles in the driveway was a constantly changing situation so that specific knowledge of the condition could not pre-exist without specific subjective observation at any given time to determine the presence or absence of danger. Thus, the child had no subjective knowledge of the danger from the approaching truck that hit her; therefore, the first element of the defense of assumption of the risk

was not proved. It was proper to deny motions for summary judgment, directed verdict, and j.n.o.v.

In contrast to the facts of this case, *Goodman v. City of Smyrna*, 230 Ga. App. 630 (497 SE2d 372) (1998), dealt with a specific static condition of a known danger posed by a downhill street grade to a curve in the street without a guardrail and a steep drop-off to a creek, which the 11-year-old knew of generally and subjectively both prior to and during her fleeing on skates down the street toward the open and obvious static danger. In contrast in this case, the nine-year-old never saw the truck that hit her so that she never had a subjective knowledge of the actual danger to assume such risk. Thus, the facts of this case failed to establish the first element of the defense of assumption of the risk. See *Vaughn v. Pleasant*, supra at 864.

The trial court properly refused to give a jury instruction that was not authorized by the evidence. See *Stinson v. Allstate Ins. Co.*, 212 Ga. App. 179, 182 (2) (a) (441 SE2d 453) (1994).

2. The defendants contend that the trial court erred in denying its motions for directed verdict, j.n.o.v., and new trial based on the plaintiff's conduct being the sole proximate cause of her injuries.

"The question of proximate cause is one for the jury except in palpable, clear, and indisputable cases." (Citation and punctuation omitted.) *Woodbury v. Whitmire*, 246 Ga. 349, 350 (1) (271 SE2d 491) (1980).

[P]roximate cause is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent. The best use that can be made of the authorities on proximate cause is merely to furnish illustrations of situations which judicious men upon careful consideration have adjudged to be on one side of the line or the other. Thus, whether proximate cause exists in a given case is a mixed question of law and fact. It requires both fact-finding in the "what happened" sense, and an evaluation of whether the facts measure up to the legal standard set by precedent. Ordinarily, both determinations are most appropriately made by a jury upon appropriate instructions from the judge. The decision may be made by the trial judge or appellate court only if reasonable persons could not differ as to both the relevant facts and the evaluative application of legal standards (such as the legal concept of "foreseeability") to the facts. In other words, although what amounts to proximate cause is undeniably a jury question, it will be

determined by the court as a matter of law in plain and undisputed cases.

(Citations and punctuation omitted.) *Atlanta Obstetrics &c. Group v. Coleman*, 260 Ga. 569-570 (398 SE2d 16) (1990); see also *Bailey v. Jim's Minit Market*, 242 Ga. App. 518, 519 (529 SE2d 436) (2000).

[Plaintiff at nine years] come[s] within the age category of minors whose failure to exercise due care is for decision by a jury. There is no presumption of law that a child between the ages of seven and fourteen did or did not exercise due care, or does or does not have sufficient capacity to recognize danger or to observe due care. As was well said by Judge Bell in . . . controlling authority: "It seems clear from the Georgia cases that the question of capacity or lack of capacity to be contributorily negligent in the case of children between the ages of seven and fourteen is a subjective one which necessarily depends in each situation upon the particular child's mental and physical capacity. Thus, there is no presumption that the child did or did not exercise due care or does or does not have sufficient capacity to recognize danger or to observe due care. Since the question of capacity is an individual one in each of the cases involving children between seven and fourteen years of age, the jury must first find that the particular child had the capacity required and then must decide whether or not the child exercised it. . . . The better rule would be for the jury to deal with each case upon its own facts, unhampered by presumptions of law either for or against the competency of the child."

(Citations and punctuation omitted.) *Jackson v. Young*, 125 Ga. App. 342, 343-344 (2) (187 SE2d 564) (1972); see also *Goodman v. City of Smyrna*, supra at 632.

A child of tender years may not be under the duty of exercising ordinary care as defined in the Civil Code, but [she] is charged with the duty of exercising such care as [her] capacity, mental and physical, fits [her] for exercising, this capacity to be judged by the jury from the circumstances surrounding the transaction under investigation, and the child's conduct in reference thereto. Necessarily it was for the jury to determine in the present case what due care required of the plaintiff, a child [nine] years of age, at the time of the injury, and if they should find that [she] was of

the age capable of exercising some degree of care, under the law [she] is bound to that extent.

*Huckabee v. Grace,* 48 Ga. App. 621, 637-638 (4) (173 SE 744) (1934); see also OCGA § 51-1-5; *Sturdivant v. Polk,* 140 Ga. App. 152, 154 (3) (230 SE2d 115) (1976); *Ragan v. Goddard,* 43 Ga. App. 599, 602-603 (159 SE 743) (1931).

[The] statute provides: The term "due care," when used in reference to a child of tender years, is such care as the child's mental and physical capacities enable him to exercise in the actual circumstances of the occasion and situation under investigation. The question of a child's negligence is therefore one for the jury under appropriate instruction from the court.

(Punctuation omitted.) *Pearson v. Small World Day Care Center,* 234 Ga. App. 843, 845 (2) (b) (508 SE2d 200) (1998).

Even third-party criminal conduct through an attack on unsupervised children cannot be held as a matter of law to be unforeseeable in a negligent supervision case, because the person supervising the child of tender years should reasonably foresee such dangers to the child of tender years. The risk of a motor vehicle striking an unsupervised child in the street is "so obviously foreseeable that an unforeseeability argument [cannot] reasonably be made." *Wallace v. Boys Club of Albany &c.,* 211 Ga. App. 534, 537 (2) (439 SE2d 746) (1993).

Thus, the issue of causation was for the jury, i.e., defendants' negligence or plaintiff's negligence, if any, or of defendants' foreseeability as proximate cause with plaintiff's conduct. See *Harris v. Hardman,* 133 Ga. App. 941, 942 (3) (212 SE2d 883) (1975). Neither a directed verdict nor a j.n.o.v. was appropriate in this case, because the evidence and all reasonable inferences therefrom failed to demand a particular verdict. *Gen. Manufactured Housing v. Murray,* supra at 383 (1).

3. The defendants contend that the trial court erred in denying its motions for directed verdict, j.n.o.v., and new trial, because there was no evidence to support a verdict under a theory of negligent supervision and of premises liability.

The defendants as owners and occupiers of the premises determined that, in the exercise of ordinary care to keep the premises and approaches safe, the area adjacent to the entrance to the program center occupied by children in the complex should be a no-parking zone and so designated the area, because vehicles in this area obstructed views of the driveway for pedestrians and drivers

approaching the crossing, creating a danger as well as creating a hazard when passengers are picked up or dropped off there. OCGA § 51-3-1; *Sutton v. Winn Dixie Stores*, 233 Ga. App. 424, 425 (504 SE2d 245) (1998). The overgrown bushes along the driveway in this area further obstructed the vision of both pedestrians and drivers, adding to the existing danger. Thus, the creation of the no-parking zone demonstrated an express awareness and appreciation of all dangerous hazards created by parked vehicles as superior knowledge. *Keaton v. A.B.C. Drug Co.*, 266 Ga. 385, 387-388 (2) (467 SE2d 558) (1996); *Sutton v. Winn Dixie Stores*, supra at 426. Further, the overgrown bushes in the area, along with the presence of the "no parking" sign, was evidence of constructive notice of the danger for a significant period of time. Although the defendants prohibited parking in the area as a danger, it neither patrolled the area to enforce the no-parking zone nor placed physical barriers, i.e., planters, metal posts, concrete curbing, concrete or other barriers, or fixed flexible posts, to physically exclude parking at all times. There existed evidence of actual notice of the danger from designating the area no parking. Further, the presence of the overgrown bushes and the weathered "no parking" sign gave constructive notice that the danger existed for sufficient time for the jury to infer that defendants had received constructive notice of the dangerous condition on the premises. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980); *K-Mart Corp. v. Jackson*, 239 Ga. App. 176, 177-178 (521 SE2d 93) (1999); *Moore v. Kroger Co.*, 221 Ga. App. 520, 521 (471 SE2d 916) (1996). Since both the overgrown bushes and the presence of the "no parking" sign had to have existed for more than just days, then the actual length of time created a jury issue.

"The measure of precaution which must be taken by one having a child in his care, who stands in no relation to the child except that he has undertaken to care for it, is that care which a prudent person would exercise under like circumstances." *La Petite Academy v. Turner*, 247 Ga. App. 360, 362 (1) (543 SE2d 393) (2000).

> [T]he measure of duty of a person undertaking control and supervision of a child to exercise reasonable care for the safety of the child is to be gauged by the standard of the average responsible parent; such person is not an insurer of the safety of the child and has no duty to foresee and guard against every possible hazard. . . . Children of tender years and youthful persons generally are entitled to care proportioned to their inability to foresee and avoid the perils that they may encounter, as well as to the superior knowledge of persons who come into contact with them. In cases of this nature the age, experience, and capacity of the child become

controlling, not only on the matter of the child's responsibilities to himself, but also as they bear on the responsibility of the person who has him in custody. As the age and capacity of the child increase[ ], the responsibility for his own safety also increase[s], with the necessary result that the responsibilities of his custodian decrease proportionately. And, finally, the situation may reach a point at which nonliability is determinable as a matter of law.

(Citations and punctuation omitted.) *Laite v. Baxter*, 126 Ga. App. 743, 745-746 (2) (191 SE2d 531) (1972).

Arguendo, even if the defendants had no legal duty to supervise the children of tender years in the enrichment program, a jury issue arose as to whether the defendants through their actions voluntarily assumed the duty of supervision and control through the method of operation of the program in the complex. "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." (Citation and punctuation omitted.) *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 837 (331 SE2d 899) (1985). "[T]he law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which an action lies." (Citation and punctuation omitted.) *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 524 (3) (a) (317 SE2d 853) (1984).

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person.

(Citation and punctuation omitted.) *Huggins v. Aetna Cas. &c. Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980).

Further, when the employee of the defendant sent the plaintiff and the other child on the mission to empty the trash from the program and directed the children not to run constituted some evidence of both supervision and control for the jury's consideration of the issue. There being some evidence in dispute, it was proper for the trial court to deny a directed verdict and j.n.o.v. "A judgment n.o.v. is

properly granted only when there can be only one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the jury's verdict, it is not error to deny the motion." (Citations and punctuation omitted.) *Ga. Ports Auth. v. Southeast Atlantic Cargo Operations*, 202 Ga. App. 318, 324 (3) (414 SE2d 232) (1991).

Neither *City Council of Augusta v. Booker*, 229 Ga. App. 566 (494 SE2d 374) (1997) (defendant city was allegedly negligent in maintaining obstructions so motorist could not see child), nor *Bacon v. Mayor &c. of Savannah*, 241 Ga. App. 211, 213 (525 SE2d 115) (1999) (alleged negligence in obstructing view by trees), applies, because the alleged negligence here was as to negligent supervision and premises liability, which were acts of commission as opposed to maintaining a static condition.

"Because a child [of tender years] may be unable to appreciate a danger and, therefore, to have knowledge of the hazard equal to that of the owner/occupier, an owner/occupier may be held to a higher standard of care toward a child than toward an adult." *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391, 392 (3) (394 SE2d 345) (1990). The defendants admitted in solemn judicio that they were aware of the impropriety of parked vehicles alongside the leasing office. OCGA §§ 9-11-36; 24-3-30; *Pulte Home Corp. v. Woodland Nursery &c.*, 230 Ga. App. 455 (496 SE2d 546) (1998).

The evidence created a jury issue as to negligence, because it was not so "plain, palpable, and indisputable" that such issues could be decided as a matter of law. Thus, "if there is even slight evidence on a specific issue, it is not error for the court to charge the jury on the law related to that issue." *Armandroff v. Cushing*, 250 Ga. App. 105, 106 (1) (550 SE2d 674) (2001).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED JANUARY 15, 2002 — ▮▮▮▮▮▮

*Lord, Bissell & Brook, Corliss S. Lawson, Devlin & Robinson, Earnest Redwine*, for appellants.

*Stuart B. Houck, Sheryl L. Burke, Rosser A. Malone*, for appellees.