A04A0826. WHITMIRE v. GEORGIA POWER COMPANY et al.
(607 SE2d 213)

ANDREWS, Presiding Judge.

Charles Whitmire was electrocuted when equipment he was using to perform work on a water and sewer line project came into contact with an overhead 46,000 volt electric line owned by Georgia Power Company (Georgia Power). Mr. Whitmire was standing on the ground guiding a pipe into an excavated trench for his employer, C&B Mechanical Contractors (C&B), when the backhoe which held the pipe by a cable contacted the line and electricity flowed from the line through his body, causing his death. Mr. Whitmire's surviving spouse, Sherrie Whitmire, brought a wrongful death suit against Georgia Power; Utilities Protection Center, Inc. (UPC); and Burkeen Construction Company, Inc. (Burkeen). She claimed that Georgia Power failed to take safety precautions required by the High-voltage Safety Act (HVSA) (OCGA § 46-3-30 et seq.) to protect Mr. Whitmire from electrocution; that UPC failed to comply with provisions of the HVSA requiring it to receive notice from C&B regarding work performed near the electric line and to forward the notice to Georgia Power, and that Burkeen was liable because it negligently breached a duty owed to Mr. Whitmire under a contract which required Burkeen to locate the line for Georgia Power after notice was given under the HVSA.

---

[6] See generally *In re Spruell*, supra at 325 (1).

Ms. Whitmire brought this appeal from the trial court's order granting summary judgment to all three defendants. For the following reasons, we affirm the grant of summary judgment to all the defendants.

1. The trial court correctly granted summary judgment in favor of UPC because there is no basis in the record for concluding that UPC negligently performed or failed to perform a duty imposed on it by the HVSA. To address this issue, we first set forth the relevant provisions of the HVSA.

UPC is a corporation operating pursuant to the HVSA for the purpose of receiving notices required by the HVSA from workers or their employers who intend to perform work near high-voltage electric lines. OCGA §§ 46-3-32 (4); 46-3-34 (a), (b); *Jackson Elec. Membership Corp. v. Smith*, 276 Ga. 208, 209 (576 SE2d 878) (2003). Under the HVSA, high-voltage lines "means an electric line or lines installed above ground level having a voltage in excess of 750 volts between conductors or from any conductor to ground." OCGA § 46-3-32 (1). The purpose of the HVSA

> is to prevent injury to persons and property and interruptions of utility service resulting from accidental or inadvertent contact with high-voltage electric lines by providing that no work shall be done in the vicinity of such lines unless and until the owner or operator thereof has been notified of such work and has taken one of the safety measures prescribed in this part.

OCGA § 46-3-31. Under the HVSA, "work" is defined as

> the physical act of performing or preparing to perform any activity under, over, by, or near high-voltage lines, including, but not limited to, the operation, erection, handling, storage, or transportation of any tools, machinery, ladders, antennas, equipment, supplies, materials, or apparatus or the moving of any house or other structure whenever such activity is done by a person or entity in pursuit of his trade or business.

OCGA § 46-3-32 (6). Referring specifically to this definition of work, the HVSA further provides that

> No person, firm, or corporation shall commence any work as defined in paragraph (6) of Code Section 46-3-32 if at any time any person or any item specified in paragraph (6) of Code Section 46-3-32 may be brought within ten feet of any high-voltage line unless and until:

(1) The person responsible for the work has given the notice required by Code Section 46-3-34; and

(2) The owner or operator of such high-voltage line has effectively guarded against danger from accidental contact by either deenergizing and grounding the line, relocating it, or installing protective covering or mechanical barriers, whichever safeguard is deemed by the owner or operator to be feasible under the circumstances.

OCGA § 46-3-33. Under OCGA § 46-3-34, the HVSA provides that the worker or employer responsible for the work has the duty to notify UPC prior to commencing the work and that the notice shall:

(1) Describe the tract or parcel of land upon which the work to be done is to take place with sufficient particularity to enable the owner or operator of the high-voltage lines to ascertain the precise tract or parcel of land involved;

(2) State the name, address, and telephone number of the person who will be in charge of the work;

(3) Describe the type of work to be engaged in by the person; and

(4) Designate the date upon which the work will commence and will be completed.

OCGA § 46-3-34 (b). After UPC receives the notice required by OCGA § 46-3-34 (b), its duty under the HVSA is to forward the notice to the utility owning or operating the high-voltage electric line the subject of the notice so the utility can contact the worker or employer to make arrangements for and to set a reasonable time for effecting appropriate safety precautions as required by OCGA § 46-3-33. OCGA § 46-3-34 (c). Subsection (e) of OCGA § 46-3-34 provides that the worker or employer responsible for the work "shall be responsible to assure that the safety requirements of [OCGA §] 46-3-33 are completed prior to the commencement of any such work."

Accordingly, the HVSA places duties on the workers or employers engaged in the pursuit of a trade or business in the vicinity of high-voltage electric lines to give advance work notice to UPC under specified circumstances; places duties on UPC to receive these notices and forward them to the utilities which own and operate the electric lines; and places duties on the utilities to take safety precautions after

receiving the notice. As to workers or employers, the HVSA provides that they shall not commence work, as defined in OCGA § 46-3-32 (6), under, over, by, or near high-voltage lines if at any time any person or item specified in the definition of work "may be brought within ten feet of any high-voltage line." OCGA § 46-3-33. This requires the workers or employers, who know the nature of the work and how it will be performed, to determine whether any person or item to be used in the work (as defined in OCGA § 46-3-32 (6)) "may be brought within ten feet of any high-voltage line." OCGA § 46-3-33. If the work under, over, by, or near a high-voltage line will not bring such person or item within ten feet of the line, then those responsible for the work have no duty under the HVSA to notify UPC and may commence the work. OCGA § 46-3-33. But if during the course of the work any such person or item "may be brought within ten feet of any high-voltage line," then those responsible for the work shall not commence the work until they have notified UPC pursuant to OCGA § 46-3-34, and the utility, after receiving the notice from UPC, has taken the safety precautions set forth in OCGA § 46-3-33. The HVSA places no duty on UPC or utilities to patrol electric lines to discover if work might be done within ten feet of a high-voltage line.

There is no claim in this case that the Georgia Power overhead high-voltage line was too low or otherwise failed to meet industry standards. And it is undisputed that, at the time Mr. Whitmire was electrocuted on December 5, 1999, Georgia Power had taken no safety precautions pursuant to the HVSA to protect against accidental contact with the line. The claim against UPC is that the HVSA safety precautions that would have protected against Mr. Whitmire's electrocution were not in place because UPC failed to perform its duties under the HVSA to properly receive the work notice given to it by Mr. Whitmire's employer, C&B, and to forward the notice to Georgia Power. The record, however, shows that the work notice given by C&B to UPC provided information that the HVSA safety precautions were not required because none of the water and sewer work would occur within ten feet of an overhead power line.

The record shows that UPC functioned not only to receive notices for work near overhead high-voltage lines under the HVSA, but also to receive notices for work near underground lines not covered by the HVSA. UPC's program manager testified by deposition that, based on the information provided to UPC in work notices, UPC would forward the notice to the appropriate utility with an indication that the notice was for an underground line, or for an overhead line, or for both underground and overhead lines. According to the program manager, if a caller giving notice expressed concern or doubt about whether there was a danger from overhead or underground lines or both, UPC

procedure was to forward the notice to the utility for both underground and overhead lines, or in some cases to suspend the notice until the caller could provide more information. The program manager also testified that one of the questions asked by UPC operators during notification calls is whether the work will come within ten feet of an overhead electric line.

The record further shows that a C&B employee, Ms. Massey, telephoned UPC on November 10, 1999, and notified UPC that C&B was preparing to lay a water and sewer line along the entire Westover Road. In the ensuing conversation, UPC's operator asked Massey if any of C&B's work would be performed within ten feet of an overhead power line, and Massey replied, "No ma'am." Based on the information provided by C&B, UPC's computerized system generated a notice (labeled ticket number 08140749) containing the information provided by C&B with the heading "Underground Notification," indicating that C&B notified UPC that it was about to perform work that required the location of any underground lines along Westover Road. UPC then provided Massey with the ticket number, the date set for locating any underground lines and the expiration date on the ticket, and sent the notice to the appropriate utilities, including Georgia Power. Although notices to UPC for protection from overhead high-voltage lines under the HVSA have no expiration date, the underground notice sent to Georgia Power by UPC on November 10, 1999, for C&B's water and sewer work expired in 17 days. After the original underground notice expired, Massey telephoned UPC on December 1, 1999, on behalf of C&B to request an update (or restake) of C&B's November 10, 1999 work notice for the same work at the same location along Westover Road. As a result of this call, UPC sent another underground notice to Georgia Power (labeled ticket number 08202731) noting the same water and sewer work and location information as the first notice, and showing that the earliest date C&B could commence work was December 6, 1999, the day after Mr. Whitmire was electrocuted on December 5, 1999. The underground notification sent by UPC was not a notice sent pursuant to the HVSA, which applies only to aboveground lines. OCGA § 46-3-32 (1). Accordingly, the December 6, 1999 commence work date related only to the location of underground lines and was not a date under OCGA § 46-3-34 (c) for completion of HVSA safety precautions for an overhead line.

There is no evidence on this record that UPC was negligent under the HVSA in the manner in which it received the notice given by C&B or in the manner in which it forwarded the notice to Georgia Power. When Massey called UPC on behalf of C&B to give notice of work for a water and sewer line project (posing an obvious risk of contact with an underground line), it was not a violation of the HVSA for UPC's

operator to ask if the work posed a risk of coming within ten feet of an overhead line. The HVSA places a duty on the worker or employee to determine whether any aspect of the work, including the equipment to be used, requires notice to UPC because the work may occur within ten feet of an overhead high-voltage line. When C&B responded that no work would be done within ten feet of an overhead power line, this clarified that the notice was only for an underground line and was not within the scope of the HVSA. Although Massey later stated by affidavit that, if UPC had asked if C&B wanted "protection from overhead utilities" she would have responded "yes," UPC did not breach the HVSA or create any confusion by failing to ask this question. The question posed by the UPC operator was not confusing nor, as Ms. Whitmire contends, did it wrongly presume that notice under the HVSA was only required where work may occur within ten feet of an overhead line. The provisions of OCGA § 46-3-33 are clear — notice of work to UPC and protective measures by utilities are required where "any person or any item specified in paragraph (6) of Code Section 46-3-32 may be brought within ten feet of any high-voltage line." The HVSA does not require notice of and protection from all overhead high-voltage lines which may be near the work, but only lines where the work may come within ten feet. There is nothing in the HVSA which supports Ms. Whitmire's contention that utilities have a duty to provide protective measures under OCGA § 46-3-33 for work performed at a greater unspecified distance "under, over, by, or near high-voltage lines."

Because C&B clearly notified UPC that no work would be performed within ten feet of any overhead power line, the provisions of the HVSA did not apply, and UPC had no duty to forward notice to Georgia Power under the HVSA. Accordingly, the trial court properly granted summary judgment in favor of UPC. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). The affidavits supplied by Massey and the owner of C&B stating, in effect, that the notice C&B gave to UPC was intended to be for both underground and overhead lines do not create an issue of fact. They state conclusions, not facts based on personal knowledge, and have no probative value. *Chandler v. Gately*, 119 Ga. App. 513, 514-518 (167 SE2d 697) (1969); *Dews v. Ratterree*, 246 Ga. App. 324, 325-326 (540 SE2d 250) (2000).

2. The trial court also correctly granted summary judgment in favor of Georgia Power and Burkeen. Pursuant to the notice given by C&B to UPC, the only notice forwarded by UPC to Georgia Power was for the location of underground lines. This was not notice to Georgia Power under the HVSA to locate and apply safety precautions on the overhead high-voltage line that electrocuted Mr. Whitmire. Georgia Power had no duty under the HVSA to patrol its otherwise lawfully located and maintained high-voltage lines in an effort to determine

whether any work which might be undertaken in the vicinity of a line might come within the notice requirements of the HVSA or cause harm. In the absence of any evidence that Georgia Power was given the notice required under the HVSA that the work at issue may come within ten feet of the line, Georgia Power had no duty to take safety precautions for the benefit of Mr. Whitmire, and the trial court properly granted summary judgment. *Jackson Elec. Membership Corp.*, 276 Ga. at 209-210; *Carden v. Ga. Power Co.*, 231 Ga. 456 (202 SE2d 55) (1973); *Green v. Moreland*, 200 Ga. App. 167, 168 (407 SE2d 119) (1991); *Butler v. Ga. Power Co.*, 183 Ga. App. 144 (358 SE2d 266) (1987).

As to Burkeen, its contract with Georgia Power provided for it to locate and mark underground lines on UPC underground notices received by Georgia Power. Pursuant to this contract, Burkeen went to the C&B water and sewer work site at issue to locate and mark underground utilities. Ms. Whitmire claims that, while performing this work for Georgia Power, Burkeen negligently breached a duty owed to Mr. Whitmire under Restatement (Second) of Torts § 324A to observe the overhead power line and inform Georgia Power of the danger so it could take safety precautions. The rule set forth in § 324A provides as follows:

> Liability to Third Person for Negligent Performance of Undertaking. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965). There is no basis for concluding that Burkeen owed a duty to Mr. Whitmire under any part of § 324A. The contractual services undertaken by Burkeen required it to locate and mark underground lines for Georgia Power, not to observe possible dangers posed by overhead lines and report this information to Georgia Power. Burkeen did not undertake to perform a duty owed by Georgia Power to Mr. Whitmire with respect to protection from the overhead line, nor did Georgia Power owe any such duty under the HVSA in the absence of the required notice. Nothing Burkeen did in the performance of its contract to locate underground lines constituted a failure to exercise reasonable care

which created or increased the risk that Mr. Whitmire would be electrocuted by the overhead line. And there is no basis for concluding that Georgia Power or Mr. Whitmire relied upon Burkeen's underground line contract to protect Mr. Whitmire from exposure to the overhead line. *Argonaut Ins. Co. v. Clark*, 154 Ga. App. 183, 184-187 (267 SE2d 797) (1980). Burkeen was also entitled to summary judgment. *Lau's Corp.*, 261 Ga. 491.

*Judgment affirmed. Smith, C. J., Johnson, P. J., and Blackburn, P. J., concur. Miller, Ellington and Phipps, JJ., concur in part and dissent in part.*

MILLER, Judge, concurring in part and dissenting in part.

While I concur with the majority's conclusion that the trial court properly granted summary judgment to Georgia Power Company (Georgia Power) and Burkeen Construction Company, Inc. (Burkeen), I must respectfully dissent from the majority's holding that the trial court properly granted summary judgment to Utilities Protection Center, Inc. (UPC). In my view, issues of fact remain regarding UPC's potential liability for failing to inform Georgia Power properly about the overhead high-voltage line that ultimately killed Mr. Whitmire.

Sherrie Whitmire sued Georgia Power, UPC, and Burkeen for the wrongful death of her spouse, Charles Whitmire. Ms. Whitmire contends that Georgia Power is liable for failing to take proper safety measures to protect her husband pursuant to Georgia's High-voltage Safety Act (OCGA § 46-3-30 et seq.). She further contends that UPC is liable for negligently handling notice calls regarding work taking place near high-voltage lines and forwarding incorrect information to Georgia Power; and that Burkeen is liable for failing to notify Georgia Power of the overhead high-voltage line that killed Mr. Whitmire. The defendants moved for summary judgment below, which the trial court granted.

On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553-554 (562 SE2d 731) (2002).

Viewed in the light most favorable to Ms. Whitmire, the evidence reveals that on December 5, 1999, Mr. Whitmire, an employee of C&B Mechanical Contractors (C&B), was killed while working to install water and sewer lines. As he assisted a backhoe installation of a sewer line, the backhoe came into contact with an overhead high-voltage line, and he was electrocuted.

On November 10, 1999, Kelly Massey, a C&B employee, called UPC to give notice of C&B's intention to commence work on Westover Road near Whiddon Mill Road to install the water and sewer lines. The UPC operator asked Massey if any work would be performed "within ten (10) feet of [any] overhead power line," and Massey replied, "No ma'am." As a result of this response, UPC sent notice ticket number 08140749 with the heading "Underground Notification" to Georgia Power indicating only that underground work would be done in the area specified by Massey. The ticket made no mention of overhead lines at the site. In her affidavit, Massey explained that she would have told the operator "yes" if she had been specifically asked whether protection from overhead lines was desired.

On December 1, 1999, Massey called UPC and requested an update (referred to as a "restake") of the notice ticket that had been issued in November to continue work at the same site. The restaked ticket number 08202731 contained the same information that had been included in the original November ticket. Specifically, the notice continued to bear the heading "Underground Notification," and did not mention any overhead lines at the site. UPC informed Massey that the earliest date on which work could begin under the restaked ticket was December 6, 1999 (one day *after* Whitmire died).

Based on the notification from UPC that only underground work would be done and that no overhead high-voltage line protection had been requested, Burkeen, Georgia Power's contractor, checked the proposed work area for underground power cables only. Burkeen had a contract with Georgia Power whereby it agreed to locate and mark *underground* power facilities when a notice to Georgia Power indicated that no protection from overhead high-voltage lines was needed. Burkeen had no contractual obligation to locate or mark overhead high-voltage lines. Burkeen checked the site for underground facilities, but assumed that it had no duty to mark the overhead high-voltage line that ultimately killed Mr. Whitmire.

1. The outcome of this case rests largely on the requirements of Georgia's High-voltage Safety Act (HVSA), which provides:

> The purpose of this part is *to prevent injury to persons* and property and interruptions of utility service resulting from accidental or inadvertent contact with high-voltage electric lines by providing that no work shall be done in the vicinity of such lines unless and until the owner or operator thereof has been notified of such work and has taken one of the safety measures prescribed in this part.

(Emphasis supplied.) OCGA § 46-3-31.

Before work can commence near high-voltage lines, the person or company responsible for the work (in this case C&B) must contact UPC to inform it about the work that is to be done. See OCGA §§ 46-3-32 (2)-(4); 46-3-34 (b). UPC then informs the utility that owns the power lines (in this case Georgia Power) of the work that will take place so that the utility can take proper safety measures before work commences. See OCGA §§ 46-3-32 (4)-(5); 46-3-33 (2).

Significantly, the HVSA defines the type of "work" of which the UPC must be notified in the following way:

"Work" means the physical act of performing or preparing to perform *any activity under, over, by, or near high-voltage lines*, including, but not limited to, the operation, erection, handling, storage, or transportation of any tools, machinery, ladders, antennas, equipment, supplies, materials, or apparatus or the moving of any house or other structure whenever such activity is done by a person or entity in pursuit of his trade or business.

(Emphasis supplied.) OCGA § 46-3-32 (6). The specifics of the required notice are set forth in OCGA § 46-3-34 (b):

Where work is to be done, the person responsible for such work shall give notice to the utilities protection center during its regular business hours at least 72 hours, excluding weekends and holidays, prior to commencing such work and such notice shall:

(1) Describe the tract or parcel of land upon which the work to be done is to take place with sufficient particularity to enable the owner or operator of the high-voltage lines to ascertain the precise tract or parcel of land involved;

(2) State the name, address, and telephone number of the person who will be in charge of the work;

(3) Describe the type of work to be engaged in by the person; and

(4) Designate the date upon which the work will commence and will be completed.

Here, C&B gave proper notice to UPC that work was going to take place "under, over, by, or near high-voltage lines" more than 72 hours before work was scheduled to commence, and, as UPC concedes,

provided all other information required by OCGA § 46-3-34 (b) by responding to the UPC operator's "litany of questions." Thus, C&B fulfilled its statutory duty to give notice to UPC of work to be done near high-voltage lines such that Georgia Power should have been advised by UPC to implement proper safety measures.

The problems for Mr. Whitmire began in this case when UPC requested additional information from C&B that was not required under the notice provisions of the HVSA quoted above. Specifically, instead of simply acting on C&B's notice that it would be working near high-voltage lines (which could include both overhead and underground lines), the UPC operator went on to ask whether any work would be performed "within ten (10) feet of [any] overhead power line." When the C&B representative replied, "No," UPC then informed Georgia Power that no request had been made for protection from overhead high-voltage lines. As explained below, a jury could reasonably find that UPC's error was the proximate cause of Mr. Whitmire's death.

UPC apparently asked the specific question about working within ten feet of an overhead high-voltage line based on the language of OCGA § 46-3-33 (1), which states that

> [n]o person, firm, or corporation shall commence any work as defined in paragraph (6) of Code Section 46-3-32 if at any time any person or any item specified in paragraph (6) of Code Section 46-3-32 may be brought within ten feet of any high-voltage line *unless and until . . . [t]he person responsible for the work has given the notice required by Code Section 46-3-34. . . .*

(Emphasis supplied.) It is worth noting that similar language about working within ten feet of a high-voltage line can be found in the limitation-of-liability provision found in OCGA § 46-3-39, which states that "[t]he owner or operator of high-voltage lines shall not be liable for damage or loss to person or property resulting from work within ten feet of high-voltage lines *unless notice has been given as required by Code Section 46-3-34. . . .*" (Emphasis supplied.)

Contrary to the interpretation that UPC and the majority seek to impose upon the HVSA, this statutory language makes clear that both the provisions about commencing work within ten feet of a high-voltage line and the limitation-of-liability provision serve purposes entirely different from those served by the *notice* requirements of OCGA § 46-3-34. As the statute states, work cannot commence within ten feet of a high-voltage line, nor can a utility be liable for injuries suffered by those working within ten feet of a high-voltage line, "*unless and until . . . [t]he person responsible for the work has*

*given the notice required by Code Section 46-3-34. . . ."* (Emphasis supplied.) OCGA § 46-3-33 (1); see also OCGA § 46-3-39. Even the definition of "work" under OCGA § 46-3-32 (6) contains nothing suggesting that the only work for which a person may receive protection after giving notice to UPC is work that takes place within ten feet of a high-voltage line. The "work" need only consist of any activity that takes place "under, over, by, or near high-voltage lines." OCGA § 46-3-32 (6). UPC and the majority cannot rely on the provisions of OCGA § 46-3-33 to add a ten-foot-working-radius limitation to the notice provisions of OCGA § 46-3-34 when no such limitation exists in the statute.

By adding this irrelevant and inappropriate limitation to the notice, UPC confused the C&B representative (who had already given proper notice without the irrelevant question being asked) and Georgia Power as well (who was misinformed about the scope of protection needed despite C&B having fulfilled its duty to give proper notice). Thus, this case presents a jury question regarding whether UPC was negligent in carrying out its duties to properly receive notice of work to be done near high-voltage lines and to forward accurate information to Georgia Power about the scope of protection needed for the work.

The fact that Mr. Whitmire started work and died one day before the work was scheduled to commence does not change the result here, because we cannot rule out the possibility that UPC's potential negligence was the proximate cause of Mr. Whitmire's death. UPC informed Georgia Power that there was no need for protection from overhead high-voltage lines in the area where Whitmire was going to be working. As a result, Georgia Power did not provide any such protection at any time before Whitmire's death. Regardless of *when* Whitmire began the work, the only protection provided at the work site would have been protection from underground lines, and Whitmire still would not have been given protection from the overhead line that ultimately killed him. Under these circumstances, a jury must resolve the question whether UPC's alleged negligence was the proximate cause of Whitmire's death. See, e.g., *Atlanta Affordable Housing Fund v. Brown*, 253 Ga. App. 286, 288 (2) (558 SE2d 827) (2002) ("The question of proximate cause is one for the jury except in palpable, clear, and indisputable cases.") (citation and punctuation omitted); see also *Bossard v. Atlanta Neighborhood Dev. Partnership*, 254 Ga. App. 799, 800 (2) (564 SE2d 31) (2002) ("Except in extraordinary cases where the facts are plain and indisputable, the jury should decide all questions of negligence, contributory negligence, cause and proximate cause. . . .") (punctuation and footnotes omitted).

I would therefore reverse the grant of summary judgment to UPC.

2. As for Georgia Power and Burkeen, the trial court properly granted summary judgment to both. As explained above, the problems in this case arose from the inappropriate question posed to C&B by UPC, and UPC's forwarding of inaccurate protection information to Georgia Power. C&B gave proper notice to UPC, but here, no liability rests with Georgia Power because it had no choice but to act on the basis of the information that it had received from UPC. There is no evidence that Georgia Power had any reason to believe that the information forwarded by UPC would be unreliable. To the extent that the received notice was improper, this was so because UPC failed in its duties, not Georgia Power. Likewise, Burkeen was contracted to check only for underground lines and had no duty to provide protection for Mr. Whitmire from overhead high-voltage lines. See OCGA § 46-3-33 (2) (*owner or operator* of high-voltage line implements safety measures); see also *Armor Elevator Co. v. Hinton*, 213 Ga. App. 27, 29-30 (2) (443 SE2d 670) (1994) (plaintiff could not recover for personal injuries as third party beneficiary of contract because defendant had no duty to plaintiff where contracting parties did not expressly intend to protect plaintiff from specific harm suffered). Thus, to the extent that liability could exist for any defendant under the facts of this case, it would exist only for UPC.

I am authorized to state that Judge Ellington and Judge Phipps join in this opinion.

DECIDED NOVEMBER 23, 2004 —

*Gregory, Christy, Maniklal & Dennis, Hardy Gregory, Jr., Preyesh K. Maniklal, Morris, Webster & Corless, Francis L. Morris, Jr., Cook & Connelly, Bobby Lee Cook*, for appellant.

*McNatt & Greene, Hugh B. McNatt, Reinhardt, Whitley, Wilmot & Summerlin, John R. Reinhardt, Moore, Clarke, Duvall & Rodgers, Charles J. Willcox, Watson, Spence, Lowe & Chambless, Louis E. Hatcher, Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Robert L. Pennington*, for appellees.