A07A0514. COMBS v. ATLANTA AUTO AUCTION, INC.
(650 SE2d 709)

MILLER, Judge.

Shanandoah Combs brought this wrongful death and personal injury action against Atlanta Auto Auction, Inc. (the "Auction"), alleging that the Auction's conduct contributed to or caused an automobile accident (the "underlying accident") in which two of Combs' minor children were killed and a third was severely injured. The trial court granted summary judgment in favor of the Auction, holding that as a matter of law, it could not be held liable for the underlying accident. Finding that there exist material issues of fact as to the Auction's liability, we reverse.

"On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence and construes that evidence in the light most favorable to the nonmoving party to determine whether material issues of fact exist." (Citation and punctuation omitted.) *Osowski v. Smith,* 262 Ga. App. 538 (586 SE2d 71) (2003).

So viewed, the evidence shows that the Auction is located on property that it owns at the end of Stansell Road, a short, unimproved road in Fulton County. The Auction is the only property serviced by Stansell Road, and that property lies approximately 25 feet beyond the point where the road crosses a set of railroad tracks. The road extends approximately 600 feet onto the Auction's property, where it then ends.

At the time of the underlying accident, Combs was employed by the Auction, working in the company's reconditioning facility. In 1996, the Auction had sought a rezoning of the property to allow it to build a new facility to house its reconditioning operations. In an ordinance passed approving the rezoning petition (the "1996 Zoning Ordinance"), the County Board of Commissioners included two conditions that are relevant to this action. The first condition provided that the Auction agreed to: "Pay the total cost of traffic signalization

at the intersection of [Stansell Road][1] and the Atlanta & West Point railroad crossing or as may be required by the Fulton County Traffic Engineer." The second condition required the Auction "[t]o contact the Director of Public Works, prior to the application for a Land Disturbance Permit[,] . . . to meet with the Fulton County Traffic Engineer" and to submit a "signed copy of the results of these meetings" when it applied for the Land Disturbance Permit ("LDP"). The Auction built the new reconditioning facility without fulfilling either of these conditions. Specifically, it does not appear from the record[2] that the Auction: (1) met with the Fulton County Traffic Engineer to discuss the installation of any traffic signal at the railroad crossing with the County; (2) attached the written results of any such meeting to its application for an LDP; or (3) offered the County money for the installation of a traffic signal at the railroad crossing.

In or around early February 1999, the Auction opened its new reconditioning facility even though it had not yet obtained a Certificate of Occupancy ("COO") for the building. On February 23, 1999, a friend of Combs drove her to work at the Auction and then left to take Combs' three children, who were in the car, to school. When crossing the railroad tracks that intersect with Stansell Road, the car was hit by a train. The accident left two of Combs' children, Shantavious and Quentavious, dead and a third child, Shanquilla, severely injured.

Following the accident, Fulton County refused to issue the Auction a COO for its new reconditioning facility because of its failure to comply with the 1996 Zoning Ordinance. The County also issued the Auction a citation based upon its failure to comply with these zoning requirements and to obtain a COO before opening the reconditioning facility. The Auction later paid the estimated cost of installing a protective signal device into escrow, asserting that the condition contained in the 1996 Zoning Ordinance requiring it to pay for the same was illegal.

Acting individually and in her capacity as the executrix of the estates of Shantavious and Quentavious Combs and as the guardian of Shanquilla Combs, Combs sued CSX Railroad, the State Department of Transportation, Fulton County, and the Auction. With respect to the Auction, Combs alleged that its negligence was a proximate cause of the underlying accident.

---

[1] The parties agree that the resolution incorrectly stated "Roosevelt Highway" instead of "Stansell Road," and that the traffic signal requirement applied to the railroad crossing at Stansell Road.

[2] The record on appeal contains only certain portions of the record that was before the trial court. Our analysis, therefore, is limited to the facts both contained in the appellate record and cited in the parties' briefs.

The Auction moved for summary judgment, arguing that, as a matter of law, its failure to comply with the 1996 Zoning Ordinance could not give rise to a claim against it. The trial court granted that motion, summarily concluding: (1) that the 1996 Zoning Ordinance violated state law and was therefore illegal; and (2) that consequently the Auction's failure to comply with that ordinance could not be considered negligence. The trial court's order does not otherwise address Combs' negligence claims against the Auction.

On appeal, Combs argues that the 1996 Zoning Ordinance is not illegal. We agree, finding that it represented a legitimate exercise of Fulton County's police power. We further find that the Auction's failure to comply with either of the traffic-related zoning conditions contained in the 1996 Zoning Ordinance, or to take any action to ameliorate the known hazard posed by the railroad crossing, subjected the Auction to liability.

1. In holding that the Auction could not be held liable for its failure to comply with the 1996 Zoning Ordinance, the trial court found that the condition requiring the Auction to pay for traffic signalization at the railroad crossing was illegal because it violated OCGA § 32-6-200, which provides:

(a) Whenever, in the judgment of . . . a county in respect to its county road system . . . such protection is reasonably necessary for the safety of the traveling public . . . [it] may order the protection of a grade crossing by the installation of protective devices. Prompt notice of such order shall be given to the railroad or railroads involved. . . . It shall be the duty of the railroad or railroads to proceed with acquisition and installation of protective devices within 60 days after receipt of an order to that effect and to complete such acquisition and installation within six months thereafter.

(b) (1) The expense of acquiring and installing a protective device shall be shared between: . . .

(B) The county . . . and the railroad involved, equally.

We fail to see how, under this statute, the zoning condition at issue can be considered illegal. The statute does not prevent a county from requiring, as a condition of zoning, that a landowner reimburse it for its share of the costs associated with the acquisition and installation of protective devices. Here, the zoning condition requiring the Auction to "[p]ay the total cost of traffic signalization" at the site of the accident can be interpreted as requiring the Auction to

reimburse Fulton County for its share of the costs associated with installing a protective device.

Such an interpretation of the statute is entirely consistent with Georgia law, which permits local governments to require that a landowner pay the cost of public improvements as a condition of rezoning. See, e.g., *Cross v. Hall County*, 238 Ga. 709, 713-714 (2) (235 SE2d 379) (1977). The only requirement is that the conditions be "imposed pursuant to the police power for the protection or benefit of neighbors to ameliorate the effects of the zoning change." Id. at 713 (2). The conditions that the Auction meet with the Fulton County Traffic Engineer and fund the installation of traffic signalization at the railroad crossing meet this requirement, and those conditions therefore represent a lawful exercise of Fulton County's police power.

2. Given that the zoning conditions were legal, we next turn to the question of whether the Auction's failure to comply with those conditions gives rise to a claim of negligence per se. We find that it does.

Under Georgia law, the violation of a statute, ordinance, or mandatory regulation may constitute negligence per se. *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 350 (3) (568 SE2d 559) (2002). The zoning conditions at issue were included in an ordinance passed by the Fulton County Commission when it granted the Auction's rezoning petition. The Auction's failure to comply with the conditions placed them in violation of Articles 4.2.1 and 23.1 of the Fulton County Zoning Ordinance. Because these ordinances imposed an affirmative duty upon the Auction, failure to comply with them can constitute negligence per se. See OCGA § 51-1-6 ("When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.").

In determining whether the Auction's violation of the zoning ordinance constitutes negligence per se as to Combs and her children, we must "examine the purpose of the [ordinance] and decide (1) whether [Combs and her children] fall[ ] within the class of persons it was intended to protect, and (2) whether the harm complained of was the harm it was intended to guard against." (Citations and punctuation omitted.) *Rabinovitz v. Accent Rent-A-Car*, 213 Ga. App. 786 (446 SE2d 244) (1994). Given that the Auction's property is the only one serviced by Stansell Road, we must conclude that the traffic-related zoning conditions were meant to protect those who were required to navigate the railroad crossing when traveling to and from the Auction. Combs and her children fall within this class. Additionally, the accident at issue is precisely the type of danger that

the zoning conditions were intended to guard against. Thus, under the circumstances of this case, the Auction's failure to comply with the zoning requirements constituted negligence per se.

The Auction attempts to avoid this holding by arguing that the zoning conditions were not violated because they were waived by the County. Specifically, the Auction asserts that the language of the zoning condition requiring the Auction to pay for a traffic signal "or [take other action] as may be required by the Fulton County Traffic Engineer" meant that the condition was optional — i.e., that the County Traffic Engineer could elect not to enforce it. To support its waiver argument, the Auction points to two facts: (1) the County approved the site plans and granted the LDP without requiring the Auction to pay for the proposed traffic signal; and (2) in 1999, the Auction sought and received another zoning variance for its property, and in the ordinance granting that petition, Fulton County again inserted a requirement that traffic signals be installed at the railroad crossing, thereby acknowledging its waiver of the identical requirement in the 1996 Zoning Ordinance. Whether this conduct demonstrates that the County waived the zoning condition, however, is a factual one, to be determined by the jury.[3]

Finally, we note that negligence per se does not equate to liability per se. Rather, to prevail on her claim of negligence per se, Combs must show a causal relation between the Auction's failure to comply with the zoning conditions and the automobile accident. See *Walter v. Orkin Exterminating Co.*, 192 Ga. App. 621, 624 (3) (385 SE2d 725) (1989).

3. Combs further asserts that the Auction's opening of its new reconditioning facility without obtaining a COO, in violation of both the Fulton County Zoning Ordinance and the Building Code, constitutes negligence per se. Employing the rationale set forth in Division 2, supra, we conclude that the Auction's conduct constituted negligence per se as to Combs, but not as to her children. The law requiring a COO for the reconditioning facility was designed to protect those working or otherwise conducting business in the building. Combs, as an employee of the Auction, falls within this class of persons; her children do not.

We further find, however, that Combs cannot, as a matter of law, prove the requisite causal connection between the Auction's failure to

---

[3] Notably, the Auction argues only that the County waived the condition requiring the Auction to pay for traffic signalization at the crossing. It does not address whether the County waived the requirement that it "meet with the Fulton County Traffic Engineer" and submit a "signed copy of the results of these meetings . . . along with the application for a Land Disturbance Permit."

obtain a COO and the underlying accident. Combs' theory of causation on this claim appears to be that the Auction's failure to comply with the 1996 Zoning Ordinance, and hence its failure to obtain a COO for the reconditioning facility, constitute a proximate cause of the underlying accident. We disagree, finding that the failure to comply with the 1996 Zoning Ordinance may have been the proximate cause of both the Auction's inability to obtain a COO and the underlying accident, but that the lack of the COO and the accident are unrelated.

"In determining what is proximate cause the true rule is, that the injury must be the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act." (Citation and punctuation omitted.) *Beasley v. A Better Gas Co.*, 269 Ga. App. 426, 428 (604 SE2d 202) (2004). While the underlying accident could be viewed as a "natural and probable consequence" of the Auction's failure to comply with the 1996 Zoning Ordinance, that accident was not a "natural and probable consequence" of the Auction's failure to obtain a COO. Assuming all other circumstances remained the same, the accident would have occurred even if the Auction had been operating the reconditioning facility with a COO. Put another way, the Auction's decision to operate its reconditioning facility without a COO did not contribute to the underlying accident. Accordingly, this theory of liability is foreclosed. See, e.g., *Med. Center of Central Ga. v. Landers*, 274 Ga. App. 78, 86 (616 SE2d 808) (2005) (no proximate cause where "an injury would have occurred notwithstanding alleged acts of negligence of the defendant").

4. Combs also seeks to hold the Auction liable under the tort doctrine of premises liability, which arises "[w]here an owner . . . of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose" and that person sustains injuries resulting from "failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. See also *Osowski*, supra, 262 Ga. App. at 539. We presume that Combs' premises liability claims are based on the theory that the part of Stansell Road on which the railroad tracks are situated represents part of the approach to the Auction's premises.

"Approach" in this context refers to property, including public ways, that although neither owned nor controlled by a landowner is:

> directly contiguous, adjacent to, and touching those entryways to premises under the control of an owner or occupier of land, through which the owner or occupier, by express or implied invitation, has induced or led others to come upon

his premises for any lawful purpose, and through which such owner or occupier could foresee a reasonable invitee would find it necessary or convenient to traverse while entering or exiting in the course of the business for which the invitation was extended. [The words] "contiguous, adjacent to, and touching" . . . mean that property within the last few steps taken by invitees, as opposed to "mere pedestrians," as they enter or exit the premises.

(Citations and punctuation omitted.) *Motel Properties v. Miller*, 263 Ga. 484, 486 (2) (436 SE2d 196) (1993). Thus, an approach is also known as the last few steps taken by an invitee immediately before entering the owner's premises. Id.

The Auction argues that because the railroad crossing sits 25 feet away from the entrance to its property, it is not located on an approach to that property — i.e., 25 feet cannot represent the "last few steps" one would take before entering the Auction's property. We note, however, that the "last few steps" rule was formulated, and has generally been applied, in the context of premises liability actions involving pedestrians and public sidewalks. See, e.g., *Food Lion v. Isaac*, 261 Ga. App. 311 (582 SE2d 476) (2003); *Rischack v. City of Perry*, 223 Ga. App. 856 (479 SE2d 163) (1996). Here, however, we are determining what part of a public road, traveled by car, constitutes an approach to the Auction's property. In doing so, we apply the principles enunciated by our Supreme Court in *Motel Properties*, while recognizing that what constitutes the "last few steps" necessarily depends upon the circumstances of a particular case — i.e., what constitutes the "last few steps" on foot is necessarily a lesser measure of proximity to the premises than the last few steps taken in the context of a faster-moving automobile. See *Todd v. F. W. Woolworth Co.*, 258 Ga. 194, 196 (1) (366 SE2d 674) (1988) ("What constitutes an approach to certain premises is a question with both factual and legal connotations."). In cases involving motor vehicles, as opposed to pedestrians, the inquiry is whether the property constitutes the *final* approach to the owner's premises.

While proximity to the owner's property is perhaps the most important circumstance in determining what constitutes a final approach to that property, it is not the only circumstance to be considered. Also important is whether the alleged approach, although part of a public way, is used primarily or exclusively by those attempting to access the landowner's premises (i.e., whether the approach is used primarily by invitees of the landowner as opposed to the public at large). See *Motel Properties*, supra, 263 Ga. at 484-485 (distinguishing invitees from "mere pedestrians"). Additionally, we consider what kinds of rights the property owner has in the public

way, including whether he has appropriated it for his own benefit, using it for some purpose other than a public way. See *Todd*, supra, 258 Ga. at 196 (1) (recognizing a landowner's legal duty "to exercise due care within the confines of [its] right in [a] public way").

As noted previously, the Auction owns the only property serviced by Stansell Road, which travels approximately 600 feet onto the Auction's property before ending. Moreover, it appears that the road's sole function is to facilitate the business operations of the Auction. A representative of the State DOT testified that the crossing did not exist until the Auction bought its property and the County thereafter created Stansell Road. There was some debate therefore, as to whether the Stansell Road crossing could be considered a public, as opposed to a private, crossing. The Auction admittedly uses the road as a "receiving area" — i.e., for purposes other than as a public roadway. Following the accident, the Auction sought to have Fulton County close the road, and have it reserved for the Auction's private use. Based on the foregoing, it appears that the Auction treats this property as an extension of its own, or, at the very least, as the functional equivalent of a private driveway.

Additionally, Combs offered unrefuted deposition testimony that, despite the existence of an alternative entrance to the Auction on Buffington Road, she was instructed by one of her supervisors to use the Stansell Road entrance. Thus, the Auction clearly "induced or led" Combs to use the Stansell Road entrance, making it reasonably foreseeable that she would find it necessary to cross the railroad tracks to access the Auction's property.

Under these circumstances, we conclude that, at the very least, the last ten to fifteen yards of Stansell Road immediately before the Auction's property, which included the railroad crossing, constitute a final approach to that property. As a result, the Auction had a legal duty "to exercise due care within the confines of [its] right in the public way." *Todd*, supra, 258 Ga. at 196 (1). See also *Zumbado v. Lincoln Property Co.*, 209 Ga. App. 163, 165 (2) (b) (433 SE2d 301) (1993) ("the duty over a public way is circumscribed by the rights in it the occupier has exercised"). This duty required the Auction to take those reasonable steps that were within its power to make this final approach safe and to warn its employees and customers of the hazard posed by the unguarded railroad crossing. See *Todd*, supra, 258 Ga. at 197 (3). Whether the Auction breached those duties and whether any such breach proximately caused the underlying accident represent questions of fact for a jury. Id.

The Auction attempts to defend against the premises liability claims brought on behalf of Combs' children by citing to the rule that a property owner is liable to a licensee, as opposed to an invitee, only for injuries resulting from the property owner's wilful and wanton

conduct. See OCGA § 51-3-2. The Auction argues that Combs' children were licensees and that its conduct was, at most, negligent.

A licensee is one who: "(1) [i]s neither a customer, a servant, nor a trespasser; (2) [d]oes not stand in any contractual relation with the owner of the premises; and (3) [i]s permitted, expressly or impliedly, to go on the premises merely for his own interests, convenience or gratification." OCGA § 51-3-2 (a). While we agree that Combs' children were merely licensees of the Auction, we also find that jury questions exist as to whether the Auction's conduct was wilful or wanton.

The record reflects that Fulton County had required the Auction to pay for traffic signalization at the railroad crossing at least three times prior to the accident, but the Auction made no effort to contact the County regarding the same until after the accident. At the time it agreed to the 1996 Zoning Ordinance, the Auction was aware of accidents and fatalities that had occurred at the railroad crossing; it considered the crossing dangerous; and it believed that future accidents could be prevented by the installation of the required traffic signalization. This evidence is sufficient to allow the jury to determine the question of whether the Auction's conduct was wanton and wilful. See, e.g., *Waldo v. Moore*, 241 Ga. App. 797, 799 (527 SE2d 887) (2000); *Humphries v. Southern R. Co.*, 51 Ga. App. 585 (181 SE 135) (1935) (exact point where ordinary negligence becomes wilful and wanton conduct is a question for the jury).

5. We also find that Combs can sustain a cause of action against the Auction for ordinary negligence.

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person.

(Citation and punctuation omitted.) *Atlanta Affordable Housing Fund v. Brown*, 253 Ga. App. 286, 292 (3) (558 SE2d 827) (2002).

In exchange for Fulton County's grant of its zoning petition, the Auction explicitly agreed to the traffic-related zoning conditions. These zoning conditions were intended for the benefit of third parties — those motorists traveling Stansell Road. Whether the Auction exercised reasonable care in fulfilling the obligations it agreed to, and whether the lack of any such care was a proximate cause of the

underlying accident, are factual questions to be decided by a jury. *Atlanta Affordable Housing Fund*, supra, 253 Ga. App. at 289.

For the foregoing reasons, we reverse the order of the trial court granting summary judgment against Combs and in favor of the Auction.

*Judgment reversed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED JULY 5, 2007 —
RECONSIDERATION DENIED JULY 31, 2007 — 

*Cathey & Strain, Edward E. Strain III, David A. Sleppy, Lisa J. Bucko, Robert P. Marcovitch*, for appellant.

*Cruser & Mitchell, William T. Mitchell, Deana L. Simon-Johnson*, for appellee.