S93G0406. MOTEL PROPERTIES, INC. v. MILLER.
(436 SE2d 196)

HUNSTEIN, Justice.

J. E. Miller brought suit against Motel Properties, Inc. d/b/a The Comfort Inn of Jekyll Island seeking damages incurred when he, while an invitee at the motel, fell on what he alleged to be an approach to the motel's premises. Miller amended his complaint to add as a defendant the Jekyll Island State Park Authority; the Authority is not a party to the current appeal. The trial court's denial of the motel's motion for summary judgment was affirmed on interlocutory appeal to the Court of Appeals. Motel Properties v. Miller, 206 Ga. App. 370 (425 SE2d 334) (1992). We granted certiorari to address whether Miller's injury occurred on an approach to the motel's premises so as to call into application our holding in Todd v. F. W. Woolworth Co., 258 Ga. 194 (366 SE2d 674) (1988). We conclude the injury did not occur on an approach and accordingly reverse.

Miller fell on a border of rock and concrete boulders, known as "rip-rap," that had been placed along the Atlantic Coast shoreline of Jekyll Island in the 1960's to retard the natural displacement of beach sand. The rip-rap is on State property governed by the Jekyll Island State Park Authority. The motel's property, which abuts the beach, is leased from the Authority. A sidewalk extends 200 feet from the motel's lobby to the unmarked edge of the motel's leasehold and ends 169 feet past the motel's property, at a point some 27 feet before the rip-rap on which Miller fell begins.[1] It is uncontroverted that the motel was not responsible for the placement of the rip-rap and that there was nothing negligent about the placement and presence of the rip-rap.

Construing the evidence in favor of Miller, as the respondent on motion for summary judgment, it appears that he was unaware the

---

[1] Access to the beach is provided by wood bridges spanning the rip-rap. The record does not reflect how far from the sidewalk the bridges are located.

beach was bordered by the rip-rap when, after a day spent driving around the island, golfing, shopping, and lounging at the motel's swimming pool,[2] he and his companion decided to take a midnight stroll on the beach. It is uncontroverted that Miller was not given any oral or written notice warning him about the presence of the rip-rap. Miller knew before he left that there were no lights artificially illuminating the beach.[3] The couple did not carry a flashlight on the walk, could not recall the presence of moonlight, and knew by the time they reached the end of the sidewalk that it was too dark to see anything in front of them, although Miller deposed he was able to tell by the feel of the sand under his feet the point at which he stepped off the end of the sidewalk. Miller continued walking forward in the darkness and fell on the rip-rap, injuring his head.

1. An owner or occupier of land is liable in damages to invitees for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe. OCGA § 51-3-1; *Todd v. F. W. Woolworth Co.*, supra. In *Todd*, this court addressed the duties a landowner has with regard to approaches to his premises and construed OCGA § 51-3-1 to impose a duty on a landowner regarding approaches to his premises that are public ways to exercise due care within the limited confines of his right in the public way, notwithstanding the landowner's lack of control over that public way approach. Id. at (1). We were not called upon in *Todd* to address the issue present in this case, i.e., what physically constitutes an approach, since the defendant in *Todd* had admitted the plaintiff had been injured on an approach to its premises. See id. at 197 (1). As to the factual question regarding what physically constitutes an approach, this Court referred with approval to *Elmore of Embry Hills v. Porcher*, 124 Ga. App. 418 (183 SE2d 923) (1971), in which it was held that except in certain circumstances,[4] the term "approaches" as used in OCGA § 51-3-1 "refers to the sidewalk or other approach that is directly contiguous, adjacent to, and touching the premises under control of the owner or occupier." *Elmore of Embry Hills*, supra at

---

[2] Miller's companion deposed that she could see the rip-rap but not the shoreline from the swimming pool.

[3] It is uncontroverted that this was not a situation where lights were present but were either not yet activated or were broken. Compare *Kreiss v. Allatoona Landing*, 108 Ga. App. 427 (133 SE2d 602) (1963) (lights were situated every 16 feet along dock but on night of fall, although lights further along plaintiff's path were lit, lights around repair area had been disconnected or had burned out).

[4] The non-exclusive list of circumstances noted in *Elmore of Embry Hills*, supra, includes situations where the landowner either created or maintained an obstruction, affirmatively acted to create a dangerous condition, or extended the approach to his premises "beyond the limits thereof by some positive action on his part, such as constructing a sidewalk, ramp, or other direct approach, and for his negligence in not keeping same in safe condition he would be liable." Id. at 420.

420.

2. We construe "approaches" to mean that property directly contiguous, adjacent to, and touching those entryways to premises under the control of an owner or occupier of land, through which the owner or occupier, by express or implied invitation, has induced or led others to come upon his premises for any lawful purpose, and through which such owner or occupier could foresee a reasonable invitee would find it necessary or convenient to traverse while entering or exiting in the course of the business for which the invitation was extended. By "contiguous, adjacent to, and touching," we mean that property within the last few steps taken by invitees, as opposed to "mere pedestrians," *Todd*, supra at 197 (2),[5] as they enter or exit the premises. It is only within the confines of this limited approach that *Todd* imposes a duty on a landowner to exercise ordinary care over property not within the landowner's control.

3. There are, of course, exceptions to this definition. As noted in *Elmore of Embry Hills*, supra, under certain circumstances non-contiguous property can be deemed an approach because the landowner extended the approach to his premises "by some *positive action* on his part, such as constructing a sidewalk, ramp, or other *direct* approach." (Emphasis supplied.) Id. Accord *Scoggins v. Campbellton Plaza Corp.*, 114 Ga. App. 23 (1) (150 SE2d 179) (1966). Such an exception is based on the fact that the owner or occupier of land, for his own particular benefit, has affirmatively exerted control over a public way or another's property.[6] The requirement of an act reflecting a landowner's positive exercise of dominion over a public way or another's property is necessary in order to avoid "impos[ing] upon invitors an unknowable and impossible burden for maintaining an undefined circumference of properties." *Todd*, supra at 198 (Weltner, J., dissenting).

4. Given this definition of "approach," no question of fact remains that Miller did not injure himself on an approach to the motel's premises so as to impose on the motel pursuant to OCGA § 51-3-1 any duty to exercise ordinary care on Miller's behalf. At the

---

[5] *Todd* distinguished its holding from *Mason v. Crowe*, 88 Ga. App. 191 (76 SE2d 432) (1953) and *Rhodes v. Perlis*, 83 Ga. App. 312 (63 SE2d 457) (1951) on the basis that those opinions involved "mere pedestrians using the sidewalk as opposed to invitees to premises such as Todd in this case." *Todd*, supra at 197 (2).

[6] The need for a positive act demonstrating the exercise of control over property a party neither owns nor occupies is necessary given the well-established principle that where control over premises has been relinquished to another, the owner or occupier of those premises cannot be held liable under OCGA § 51-3-1. E.g., *Beavers v. Moore*, 200 Ga. App. 323 (408 SE2d 124) (1991); *Green v. Moreland*, 200 Ga. App. 167 (4) (407 SE2d 119) (1991). Accord OCGA § 44-7-14 (landlord who has fully parted with possession and the right of possession not liable to third parties for tenant's negligent or illegal use of premises where damages did not arise from defective construction or a failure to keep premises in repair).

time of his fall, Miller was approximately 196 feet away from premises controlled by the motel.[7] No exception to the contiguous approach definition applies in this case because even assuming, arguendo, that the sidewalk past the motel's property constituted an extension of the approach to the motel, it is uncontroverted Miller's fall did not occur on the sidewalk but instead occurred on rocks some 27 feet past the end of the sidewalk at a location over which the motel exercised no positive control. We reject the argument that the duty imposed on owners and occupiers of land by OCGA § 51-3-1 extends to what at best is an approach to an approach.

Accordingly, because the evidence is uncontroverted that Miller was not injured on the premises or approaches of the motel, the Court of Appeals erred by affirming the trial court's denial of the motel's motion for summary judgment.[8]

*Judgment reversed. Clarke, C. J., Benham and Fletcher, JJ., concur; Hunt, P. J., Sears-Collins, J., and Judge Cloud Morgan dissent. Carley, J., disqualified.*

HUNT, Presiding Justice, dissenting.

The majority bases its decision in this case on a definition of "approaches" that turns on a measurement of physical distance. Because I do not believe that distance is the, or even a, determinative factor in the resolution of this case, I must respectfully dissent.

In *Todd v. F. W. Woolworth Co.*, 258 Ga. 194 (366 SE2d 674) (1988), we stated that the question of what constitutes an approach to premises has both factual and legal elements. Primary among those elements is the nature of the owner's relationship to the approach and rights in that approach; implicit in these considerations is the relationship between the business, the approach and the invitee's reason for using the approach. In this case, the motel is located where it is because of its proximity to the beach. The motel capitalizes on this proximity to attract invitees, and the invitees pay for access to and use of the beach. Access to the beach is controlled by the motel and is

---

[7] We find utterly without merit Miller's argument that the lease agreement between the Authority and the motel's predecessor-assignor, by containing provisions for the Authority's exercise of its statutory obligations for the governing of Jekyll Island State Park, see OCGA § 12-3-230 et seq., made the motel a "joint venturer" with the Authority so as to grant the motel any control whatsoever over the property governed by the Authority.

[8] Our holding above renders it unnecessary to determine whether as a matter of law, Miller cannot recover because he failed to exercise ordinary care for his own safety by deliberately and knowingly undertaking an obviously dangerous thing, i.e., by leaving the sidewalk and walking into complete darkness into an area commonly known not to be "generally level, smooth and firm." *Malone v. Lombard Ponds*, 105 Ga. App. 828, 829 (125 SE2d 697) (1962), modified by *Kreiss*, supra (walking in darkness alone does not preclude recovery for plaintiff's failure to exercise ordinary care for own safety in those situations where darkness conceals defendant's negligence).

by way of the path at issue here, and the motel not only can foresee but expects that its invitees will use this path to reach the beach. Because the use of the path to the beach was an integral part of the motel business and because the motel invited its patrons to use this path, the motel owed a duty to Miller as its business invitee to exercise ordinary care to keep the path safe for his use. *Scoggins v. Campbellton Plaza Corp.*, 114 Ga. App. 23, 26 (150 SE2d 179) (1966).

Strictly speaking, the property on which Miller was injured is "contiguous, adjacent to, and touching" the motel's property since no intervening property lies between the two pieces of land. The majority, however, limits our holding in *Todd* by defining property "contiguous, adjacent to, and touching" as "property within the last few steps taken by invitees" as they enter or exit the premises. While distance may be a legitimate consideration in some cases, it cannot be the sole determinative factor, and in this case, because of the nature of the approach, distance is actually irrelevant. The path to the beach leads only to and from the motel and is used, for all practical purposes, only by people going to and from the motel; that part of the path which crosses public land exists for the benefit of the motel and use of the path is public in name only. It is the fact that one who leaves the motel on this path can have only one destination that makes distance irrelevant. Distance is a proper element for consideration in cases, such as *Todd*, where distance tends to dissipate liability by expanding the field of causation and those subject to liability. A landowner has a duty to keep approaches within a few steps of its business safe because it has knowledge of and control over possible hazards on these approaches, even though these approaches may be part of a public way. The prospective invitee uses these approaches at the landowner's invitation. However, once a departing invitee has entered a public way and gone beyond this limited area of liability, that invitee ceases to be an invitee and the landowner's duty ends. The range of possible destinations for the departed invitee is limitless, the departed invitee is acting in his or her own interest, and a landowner cannot, nor is it required to, foresee where that individual will go; further, the landowner has no control over possible hazards on the premises of other landowners. In the present case, distance does nothing to diminish the duty the landowner owes to its patrons; regardless of whether the distance to the beach is two or two hundred feet from its premises, the invitee remains its invitee, in the sense that the invitee is using an avenue of access the landowner has used to induce the invitee onto its property; it knows, indeed has induced, the invitee to use this avenue of access, and it can foresee that injury may occur through use of this access. This is markedly different from a situation in which an invitee uses avenues of access to other destinations (thus ceasing to be the invitee of the motel) because the motel owner has no

interest which he can control in those other destinations and has done nothing to induce the invitee to enter upon another's premises. It is for a jury to decide whether the motel breached its duty to Miller; the trial court properly denied summary judgment.

I am authorized to state that Justice Sears-Collins and Judge C. Cloud Morgan join in this dissent.

MORGAN, Judge, dissenting.

While fully concurring in the dissent of Presiding Justice Hunt, the writer also wishes to express sympathy for the trial judges of this state who may be called upon at some future date to apply the rule announced today by the majority in this case.

DECIDED NOVEMBER 1, 1993.

*Forbes & Bowman, Morton G. Forbes, Johnny A. Foster,* for appellant.

*Michael J. Bowers, Attorney General, Roland F. Matson, Senior Assistant Attorney General, John P. Batson,* for appellee.