A03A0533. FOOD LION, INC. v. ISAAC.
(582 SE2d 476)

ANDREWS, Presiding Judge.

Jane Isaac sued Food Lion, Inc. pursuant to OCGA § 51-3-1 for injuries she suffered when she slipped and fell after exiting the Food Lion premises as she was walking to her car. The issue presented in Food Lion's appeal from the denial of its motion for summary judgment is whether Isaac's slip and fall occurred in an "approach" to its premises within the meaning of OCGA § 51-3-1, which required Food Lion to exercise ordinary care to keep not only its premises but also its approaches safe for invitees.

Because the facts establish that Isaac slipped and fell while walking in a parking lot owned and maintained by Food Lion's landlord, and which was separated from the store by a sidewalk, we find

---

[13] See generally *Pullen v. Oxford*, 227 Ga. App. 782, 783 (2) (490 SE2d 478) (1997).

Isaac was not within an "approach" within the meaning of OCGA § 51-3-1. Accordingly, the trial court erred by denying summary judgment to Food Lion.

Pursuant to OCGA § 51-3-1, Food Lion had a duty to exercise ordinary care to keep the approaches to its premises safe for invitees even if those approaches were over property not within its control. *Motel Properties v. Miller*, 263 Ga. 484, 486 (436 SE2d 196) (1993); *Elmore of Embry Hills v. Porcher*, 124 Ga. App. 418, 419-420 (183 SE2d 923) (1971). Under *Motel Properties*, "approaches" in OCGA § 51-3-1 mean

> that property directly contiguous, adjacent to, and touching those entryways to premises under the control of an owner or occupier of land, through which the owner or occupier, by express or implied invitation, has induced or led others to come upon his premises for any lawful purpose, and through which such owner or occupier could foresee a reasonable invitee would find it necessary or convenient to traverse while entering or exiting in the course of the business for which the invitation was extended. By "contiguous, adjacent to, and touching," we mean that property within the last few steps taken by invitees, as opposed to "mere pedestrians," as they enter or exit the premises.

(Citation and footnote omitted.) Id. at 486.

Applying this definition, the facts show that Isaac was not within an approach to the Food Lion premises when she slipped and fell. Isaac testified that, after she exited the store, she crossed a sidewalk adjacent to the store, and slipped and fell in the asphalt parking lot area in front of the store. The parking lot was a common area of the shopping center where the store was located and was owned and maintained by Food Lion's landlord. Isaac estimated she was about ten feet from the store entrance when she slipped and fell, but she based this estimate on her additional estimate that she was parked about twenty feet from the entrance to the store and that she slipped and fell about halfway to her car. In fact, the site map of the shopping center showing the parking area and the front of the Food Lion store, which was submitted by Food Lion in support of its motion for summary judgment, shows that it was physically impossible for Isaac to have been parked within 20 feet of the store entrance. If Isaac was parked in the second closest parking space to the store about midway between the two front entrances to the store, as she testified, the site map shows that she was parked at least fifty feet from the entrance. The map also shows a 12-foot-wide concrete

sidewalk running adjacent to and in front of the store between the store and the parking lot.

Regardless of the exact area of the parking lot Isaac was in when she slipped and fell, the record shows she slipped and fell in a parking lot separated from the Food Lion store by a sidewalk. As we held in *Elmore of Embry Hills*, the "approaches" under OCGA § 51-3-1 included the sidewalk immediately in front of and adjacent to the premises leased by Food Lion, but it did not include the landlord owned and maintained parking lot adjacent to the sidewalk. Id. at 420.

*Judgment reversed. Johnson, P. J., Mikell and Adams, JJ., concur. Blackburn, P. J., Eldridge and Barnes, JJ., dissent.*

BARNES, Judge, dissenting.

Because I believe an issue of fact exists on whether Food Lion exerted sufficient control over the parking spaces directly in front of its store such that it had a duty to keep that area safe for its invitees, I must respectfully dissent. Additionally, I believe that the issue of the exact locale of Isaac's fall is for the jury to decide.

While it is true that our Supreme Court has held that the term approach "'refers to the sidewalk or other approach that is directly contiguous, adjacent to, and touching the premises under control of the owner or occupier,'" *Motel Properties v. Miller*, 263 Ga. 484, 485 (1) (436 SE2d 196) (1993), the Court also stated that in certain circumstances such as "situations where the landowner either created or maintained an obstruction, affirmatively acted to create a dangerous condition, or extended the approach to his premises beyond the limits thereof by some positive action on his part, such as constructing a sidewalk, ramp, or other direct approach," the owner-occupier could be liable for not keeping this area in a safe condition. (Punctuation omitted.) Id. at 485, n. 4. The Court noted the list of exceptions enumerated above was nonexclusive and further elaborated that

> [s]uch an exception is based on the fact that the owner or occupier of land, for his own particular benefit, has affirmatively exerted control over a public way or another's property. The requirement of an act reflecting a landowner's positive exercise of dominion over a public way or another's property is necessary in order to avoid imposing upon invitors an unknowable and impossible burden for maintaining an undefined circumference of properties.

(Citation, punctuation and footnote omitted.) Id. at 486 (3). See *Elmore of Embry Hills v. Porcher*, 124 Ga. App. 418 (183 SE2d 923) (1971). That being so, I believe a leased parking lot directly in front

of a grocery store, routinely traversed by the store's bag boys performing various duties, which Food Lion equipped with apparatus solely for the return of buggies belonging to the grocery store could be such an exception contemplated by *Motel Properties* and *Elmore of Embry Hills*. Further, there is also some question of whether Food Lion affirmatively acknowledged that it was exercising control over this area when the assistant store manager, in response to Isaac's report that she had fallen, responded that "there wasn't a bag boy around to clean it up."

I am also concerned that the majority has entered a province best left to the jury when it dismissed Isaac's deposition testimony that she parked approximately twenty feet from the store on the day of the incident and that she was approximately ten feet from the store when she fell. The site map of the parking lot (if it is indeed a correct representation of the parking lot's measurements), which was presented by Food Lion in support of its motion for summary judgment, may indeed show that some of Isaac's calculations were inaccurate; this would at most, however, create a jury question as to credibility which, in turn, creates a material conflict in the evidence, requiring denial of the summary judgment motion.

While Isaac may have been inaccurate in her approximation of certain distances, only a trial jury can determine, between competing reasonable inferences, which inference to draw from the evidence before them. *McCarty v. Nat. Life &c. Ins. Co.*, 107 Ga. App. 178, 179 (1) (129 SE2d 408) (1962).

Accordingly, I respectfully dissent.

I am authorized to state that Presiding Judge Blackburn and Judge Eldridge join in this dissent.

DECIDED APRIL 25, 2003 —
RECONSIDERATION DENIED MAY 19, 2003 —

*Fulcher, Hagler, Reed, Hanks & Harper, Stephen H. Brown*, for appellant.

*Ellis R. Garnett*, for appellee.